UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
CAROLYN JOY BERRY;                              :
RESPONSIBLE KIDS, LLC; and                      :
KIDS FOR GLOBAL PEACE INC.,                     :
                                                :
            Plaintiffs,                         :      Civil Action No.   1:19-cv-73
                                                :
      v.                                        :
                                                :
BRITE STAR MEDIA GROUP, INC.;                   :
JOY BERRY MEDIA CORPORATION;                    :
THE GOETT FOUNDATION ETERNITY                   :
CHILD GOOD HEART; THE GARRY AND                 :
DARILYNE GOETT FOUNDATION;                      :
V MEDIA HOLDINGS, LLC: SO HI LLC;               :
VINCENT GOETT; RICK INCROCCI;                   :
EDUCATIONAL PUBLISHING                          :
CONCEPTS, LLC; JOY BERRY                         :
MEDIA, LLC; ROGER WATKINS;                      :
INSPIRED STUDIOS, INC.;                         :
DONALD KASEN; DOES 1-50; and                    :
XYZ CORPORATIONS 1-50,                          :
                                                :
            Defendants,                         :
-------------------------------------------------------------X

## COMPLAINT

Plaintiffs Carolyn Joy Berry, Responsible Kids, LLC and Kids for Global Peace Inc. (hereinafter referred to collectively as "Plaintiffs"), by their attorneys, D H Cavanaugh Associates and From Law PLLC, as and for their complaint, allege as follows:

## NATURE OF THE ACTION

1.      This is an action for an injunction, an accounting for profits and money damages arising from Defendants' willful infringement of Plaintiffs' copyright-protected works, unfair competition, common law trademark infringement, breach of contract, and breach of fiduciary duties under Federal and state law.

## THE PARTIES

2.      Plaintiff Carolyn Joy Berry (hereinafter referred to as "Plaintiff Berry," "Joy Berry" or "Berry") is an individual having a residence and her principal place of business in New York.

3.      Plaintiff Responsible Kids, LLC, (hereinafter referred to as "RK") is a limited liability company organized and existing under the laws of Arizona and qualified to do business in the State of New York with its principal place of business at 598 President Street in Brooklyn, New York.

4.      Plaintiff Kids for Global Peace Inc. (hereinafter referred to as "KGP") is a not-for-profit corporation organized and existing under the laws of the State of New York with its principal place of business at 598 President Street in Brooklyn, New York.

5.      Plaintiffs are informed and believe and thereupon allege that at all times relevant hereto:

        a.      Brite Star Media Group (hereinafter referred to as "Brite Star") is a corporation organized and existing under the laws of the State of Nevada with its principal place of business at 1141 Southern Highlands Parkway in Las Vegas, Nevada.  On information and belief, Brite Star is either doing business in or was engaged in the transaction of business within this judicial district at all times relevant herein.

        b.      Joy Berry Media Corporation (hereinafter referred to as "JBMC") is a corporation organized and existing under the laws of the State of Nevada.  On information and belief, JBMC was either doing business in or was

2

engaged in the transaction of business within this judicial district at all times relevant herein.

c.     The Goett Foundation Eternity Child Good Heart (hereinafter referred to as the "Goett Foundation") is a not-for-profit corporation organized and existing under the laws of the State of Nevada with its principal place of business at 1141 Southern Highlands Parkway in Las Vegas, Nevada.  On information and belief, the Goett Foundation is either doing business in or was engaged in the transaction of business within this judicial district at all times relevant herein.

d.     The Garry and Darilyne Goett Foundation (hereinafter referred to as the "GDG Foundation") is a not-for-profit corporation organized and existing under the laws of the State of Nevada with its principal place of business at 1141 Southern Highlands Parkway in Las Vegas, Nevada.   On information and belief, the GDG Foundation is either doing business in or was engaged in the transaction of business within this judicial district at all times relevant herein.

e.     V Media Holdings, LLC (hereinafter referred to as "V Media") was a limited liability company organized and existing under the laws of the State of Nevada whose status was revoked and whose principal place of business was at 1141 Southern Highlands Parkway in Las Vegas, Nevada. On information and belief, V Media was either doing business in or was engaged in the transaction of business within this judicial district at all times relevant herein.

f.    SO HI LLC (hereinafter referred to as "SO HI") is a limited liability company organized and existing under the laws of the State of Nevada whose principal place of business is at 1141 Southern Highlands Parkway, Suite 335 in Las Vegas, Nevada.  On information and belief, SO HI is either doing business in or is engaged in the transaction of business within this judicial district at all times relevant herein.

g.    Rick Incrocci (hereinafter referred to as "Incrocci") is a resident of the State of Illinois with a principal place of business at 1103 Bradbury Circle in Carol Stream, Illinois, and is either doing business in or is engaged in the transaction of business within this judicial district.

h.    Vincent Goett (hereinafter referred to as "Goett") is a resident of the State of Nevada and is either doing business in or is engaged in the transaction of business within this judicial district.  Goett is an active, conscious and dominant force behind the acts of Brite Star, JBMC, the Goett Foundation, the GDG Foundation, V Media and SO HI complained of herein, which acts he has engaged in for his own gain and benefit and for the gain and benefit of Brite Star, JBMC, the Goett Foundation, the GDG Foundation, V Media and SO HI as his alter ego.

i.    Educational Publishing Concepts, LLC (hereinafter referred to as "Educational Publishing") was a corporation organized and existing under the laws of the State of Illinois which was involuntarily dissolved and whose principal place business was at 502 Campbell Court in Wheaton, Illinois.  On information and belief, Educational Publishing was either

4

doing business in or was engaged in the transaction of business within this judicial district at times relevant herein.

j.     Joy Berry Media, LLC (hereinafter referred to as "Joy Berry Media") was a limited liability company organized and existing under the laws of the State of Illinois which was involuntarily dissolved and whose principal place of business was at 502 Campbell Court in Wheaton, Illinois and with a second principal place of business at 598 President Street in Brooklyn, New York.   On information and belief, Joy Berry Media was either doing business in or was engaged in the transaction of business within this judicial district at times relevant herein.

k.     Roger Watkins is a resident of the State of Illinois and is either doing business in or is engaged in the transaction of business within this judicial district.   Watkins is an active, conscious and dominant force behind the acts of Educational Publishing, Joy Berry Media, JBMC and Brite Star complained of herein, which acts he has engaged in for his own gain and benefit and for the gain and benefit of Educational Publishing, Joy Berry Media, JBMC and Brite Star as his alter ego.

l.     Inspired Studios, Inc. (hereinafter referred to as "Inspired") is a corporation organized and existing under the laws of the State of New Jersey and qualified to do business in the State of Florida with its principal place of business at 8854 Via Brilliante in Wellington, Florida.   On information and belief, Inspired was either doing business in or was

engaged in the transaction of business within this judicial district at all times relevant herein.

m.    Donald Kasen is a resident of the State of Florida and is either doing business in or is engaged in the transaction of business within this judicial district.  Kasen is an active, conscious and dominant force behind the acts of Inspired complained of herein, which acts he has engaged in for his own gain and benefit and for the gain and benefit of Inspired as his alter ego.

n.    Upon information and belief, Defendants Does 1-50 are either residents or are doing business in this judicial district.  The identities of the various Does are not presently known and cannot be presently known.  This complaint will be amended to include the names of said individuals if they permit themselves to be identified.

o.    Upon information and belief, Defendants XYZ Corporations 1-50 are either doing business in or are engaged in the transaction of business within this judicial district.  The identities of XYZ Corporations 1-50 are not presently known and cannot be presently known.  This complaint will be amended to include the name of the actual company(ies) if the company(ies) permit identification.

Defendants Brite Star, JBMC, the Goett Foundation, the GDG Foundation, Joy Berry Media, V Media, Goett, Educational Publishing and Watkins are hereinafter referred to collectively as the "Goett Defendants."

6

Defendants Kasen and Inspired are hereinafter referred to collectively as the "Inspired Defendants." The Goett Defendants, the Inspired Defendants, Incrocci, Does 1-50 and XYZ Corporations 1-50 are hereinafter referred to collectively as "Defendants."

**JURISDICTION AND VENUE**

6.     This action arises under the Copyright Act of 1976, 17 U.S.C. Sec. 101 *et seq.* (the "Copyright Act"), and the common law of the State of New York. This Court has jurisdiction pursuant to 28 U.S.C. Secs. 1331, 1332 and 1338, 17 U.S.C. Sec. 101 *et seq.*, and the law of supplemental jurisdiction.

7.     The venue of this action is properly laid in the Eastern District of New York pursuant to 28 U.S.C. Secs. 1391(b) and (c), 1392 and 1400(a). Upon information and belief, each of the Defendants has been transacting and continues to transact business in this the State of New York and elsewhere in interstate commerce, or transacts business that affects such commerce, and has been committing and continues to commit the acts complained of herein in the State of New York and elsewhere in interstate commerce, and regularly has been and now does business and solicits business and derives substantial revenue from the sale and licensing of the Work and other products and services sold, used or consumed in the State of New York, including the Work, and elsewhere in interstate commerce. The Defendants expected or should have reasonably expected their acts, including the acts set forth above and complained of herein, to have consequences in the State of New York.

8.     The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

## BACKGROUND FACTS COMMON TO ALL CLAIMS

9.      Joy Berry began writing children's educational and development books in the 1970s.  She continued to write over 250 titles, which have been distributed in several languages. These titles were subsequently developed into audio/visual works and various forms of educational materials.

10.     Plaintiff Berry's protectable intellectual property, including written and audio/visual copyright-protectable works and trademarks and other indicia of the source of such works are hereinafter referred to collectively as the "Work".

11.     The Work is extensive with several different series for children of varying ages which can be divided into three categories: (1) The Classics (hereinafter referred to as the "Joy Berry Classics" or the "Classics") which are self-help books for children, parenting books and teacher curriculum; (2) The Community Center (hereinafter referred to as the "Community Center"), which are works intended for children ages 3 through 13, and; (3) KGP, which are works related to a charity organization created to address the human rights of children which has collaborated with Amnesty International and the United Nations.

12.     The Joy Berry Classics, totaling 386 titles, are the subject of existing U.S. Copyright Registration No. V3528D338, and an additional 10 titles in the "Good Answers to Tough Questions" series of books are the subject of existing U.S. Copyright Registration No. V3573D256 (the "Copyrights").  The Copyrights have been duly registered in the Copyright Office and all applicable recordation and registration formalities and notice requirements under The Copyright Act have been fully complied with.

13.     Plaintiff Berry has a pending trademark application with the United States Patent and Trademark Office for the mark JOY BERRY, Serial No. 88/023,209 in International Class

16 for a "series of non-fiction books in the field of self-help for children."

14.    Early in her career as an educator, Joy Berry worked in the evangelical church teaching young children. She believed that she had found her life's purpose: to provide children with the everyday tools to learn, make decisions and live a full life. However, Berry strongly believed that children should learn these skills without any religious affiliation and be able to later decide for themselves what, if any, religious affiliation they would have. Despite the fact that it would uproot her life, and that of her children, Joy Berry decided to leave the evangelical church because of her beliefs. She divorced her husband, who was a strong evangelical Christian, in order to raise her children outside of the evangelical church and pursue her life's work.

15.    Berry began creating books and curriculum for children, parents and educators intended to impart everyday life skills for children.

16.    The Work was very successful for the approximately thirty years that it was represented by publishing houses. Berry became known as a pioneer in books related to children's education and child development.

17.    Through the success of her Work and her resulting notoriety Berry built up a reputation for high-quality children's empowerment and self-help books and educational materials and her name developed a goodwill among the relevant purchasing public for the Work (hereinafter referred to as the "Joy Berry Brand").

18.    The Joy Berry Brand became a household name, and well known in the industry, as the source of the non-denominational self-help books teaching life skills for children with materials for children and parents and curricula for educators.

19.    Berry was approached to join the Christian reading list for the distribution of her

books which was and continues to be one of the most lucrative in the industry.  She refused because it was, and continues to be, an integral part of the Joy Berry Brand to be entirely non-denominational.

20.     In or around 1997, Berry formed the limited liability company RK.  Berry formed RK to begin exploiting the Work beyond that of the publishing companies.

21.     In or around 2002, Berry's publishing deals were coming to a close.  Having been in the business for forty years, Berry recognized that there was a shift toward digital publishing and a lot of opportunities to further exploit the Work beyond her then current publishing deals.  Berry decided to begin exploiting the Work herself.

22.     At this time, Berry's children were adults and having children of their own.  Berry decided to sell her house in Arizona and move to Brooklyn, New York, along with her children.  After settling into New York, Berry began her research and efforts to exploit the Work digitally.  She was introduced to several people in media who were very interested in the Work but none of the collaborations managed to get off the ground.

23.     In or around 2005, Berry was approached by Amnesty International to collaborate with them on a campaign to address the human rights of children globally.  Berry created a book, fourteen original songs and a 20-lesson teacher's guide for the project.  The project expanded over the years and Berry worked with the American Red Cross and the United Nations.  In 2012, it was named KGP.  In 2016, KGP was formed as a non-profit corporation with a 501(c)(3) status.

## THE BERINGERS

24.     In or around 2008, Berry was introduced to Ted Beringer (hereinafter referred to as "T. Beringer") by a former colleague who had hired one of his companies to help raise capital

to market and distribute the Work.  When Berry and the former colleague parted ways, T. Beringer approached Berry directly to help her raise capital to market and distribute the Work.

25.     Upon information and belief, T. Beringer is the Chief Executive Officer of The Beringer Group which includes three companies: Strategic Business Advisors, LLC, Beringer and Company, and BC Advisors, LLC.  T. Beringer is the Managing Director of Strategic Business Advisors, LLC, which is a boutique investment-banking firm.

26.     Upon information and belief, The Beringer Group is a Pennsylvania limited partnership of which Christopher Beringer (hereinafter referred to as "C. Beringer") is the President.  C. Beringer was the main point of contact for Berry during the years that she was represented by The Beringer Group.

27.     Upon information and belief, BC Advisors, LLC (hereinafter referred to as "BCA") is a limited liability company formed in Pennsylvania and is a registered investment adviser with the United States Securities and Exchange Commissions.  BCA has made Adviser Notice filings in the following states: Delaware, Florida, Illinois, Massachusetts, New Jersey, New York, Pennsylvania and Virginia.

28.     Upon information and belief Strategic Business Advisors, LLC, is a firm which offers strategic planning, private placements, transaction funding, internal buyouts, and mergers, acquisitions, and disposition advisory services.  It focuses on the information technology, waste services, software, healthcare, manufacturing, distribution, food, construction, financial services, and packaging and printing industries.

29.     Upon information and belief, Beringer & Company is a corporation incorporated in Pennsylvania of which T. Beringer is the President and Treasurer.

30.     On May 13, 2008, Berry and SBA executed an Agreement (hereinafter referred to

as the "SBA Rep. Agreement") for SBA to act as Berry's exclusive agent for financial and strategic consulting services, including:

> "to provide advice, project leadership and financial and strategic consulting services to assist in the marketing, negotiations and ultimate sale, licensing or other disposition of all or a significant portion of the Work."

31. SBA represented Berry from May 13, 2008 through June 2018. SBA did not secure any capital, financing, projects or otherwise for Berry during that time.

32. In or around 2012, SBA had not generated any capital or opportunities for Berry and she was in financial duress because the Work was not being distributed and she had almost completely run out of her own personal savings.

33. In or around 2012, T. Beringer organized a meeting between Berry, Beverly Hattersley and her son Gordon Hattersley. T. Beringer expressed that Beverly Hattersley would be interested in the Work and willing to provide Berry with a loan.

34. Upon information and belief, T. Beringer was, at that time, and continues to serve as, the trustee of Beverly Hattersley's estate.

35. Upon information and belief, on or around March 2012, Beverly and Gordon Hattersley met with Berry. During that meeting, Berry discussed her Work and KGP. They discussed a potential collaboration between Gordon Hattersley and Berry with respect to the further development of KGP. In furtherance of this collaboration, Beverly Hattersley agreed to loan Berry $10,500 each month to cover her living expenses while Berry sought to get the Work marketed and distributed for profit.

36. On or around May 2013, Beverly Hattersley and Berry entered into a convertible loan agreement, the details of which were organized by C. Beringer and T. Beringer.

37.     Upon information and belief, T. Beringer, acting as trustee of the Beverly Hattersley estate, issued a monthly check for $10,500 from the Beverly Hattersley estate.

38.     Upon information and belief, C. Beringer authorized the issuance of the check from the Hattersley estate directly into Joy Berry's bank account each month.

## WATKINS

39.     On or about 2012, Berry reached out to Roger "Jerry" Watkins.  Berry had met Watkins many years before because of his involvement with the educational publishing business.

40.     Berry explained to him that the immediate goal was to transfer the Work into digital form and to create a website that would make the Work available for digital distribution. Watkins represented to Berry that he would be able to transfer the Work into digital form as well as to create a website that would successfully market the Work for distribution.

41.     On or about January 15, 2013, Berry and Watkins executed a Deal Point Memorandum between them dated December 29, 2012 (hereinafter referred to as the "Watkins/Berry DPM").  Pursuant to this agreement, Watkins and Berry began doing business together under the alias Joy Berry Media with the intention of forming a limited liability company of the same name.

42.     The Watkins/Berry DPM granted Watkins the exclusive, worldwide rights to distribute the Joy Berry Classics and related ancillary products created and owned by Berry in exchange for Watkins' converting part of the Work into ebooks and launching an ecommerce joyberrybooks.com website to market and distribute both print and electronic versions of the Work.

43.     Upon information and belief, Watkins was able to convert the Work into ebooks but he was not able to create a successful website to market and distribute the Work.

44.     Upon information and belief, Watkins sought to secure sublicensing agreements to assist with the marketing and distribution of the Work.

45.     On June 5, 2014, Watkins secured a sublicensing agreement with a Chinese publishing company, Beijing Yutian Hanfeng Books Co. (hereinafter referred to as "Beijing"). Beijing paid a $50,000 advance which was split evenly between Berry and Watkins.

46.     Upon information and belief, Watkins and Berry then entered into discussions with Defendant Kasen, the President of Inspired, regarding a possible sublicense to Inspired.

47.     Upon information and belief, Inspired is, and was in 2014, an independent entertainment production distribution company engaged in the digital distribution of audio records, music, publishing, video/film and ebooks with recordings.

48.     On September 5, 2015, Watkins, Berry and Inspired entered into a sublicense agreement entitled the "Licensing Deal Point Memorandum Regarding Joy Berry Media and Inspired Studios" (hereinafter referred to as the "Inspired Sublicense").

49.     The Inspired Sublicense granted Inspired a non-exclusive license to package, market, promote and sell the Classics in the United States "Retail Market" in all media and exclusive rights to sell the Classics via Internet, broadcast, streaming, digital distribution and mobile app sales in the English language worldwide for a period of five years.

50.     On March 1, 2016, Berry, Watkins and RK entered into a Master Licensing Agreement granting exclusive worldwide rights for distribution of the Work to the soon to be formed Joy Berry Media, LLC.

51.     On April 14, 2016, Joy Berry Media, LLC (hereinafter referred to as "JBM, LLC") was formed under the laws of the State of Illinois.  On June 25, 2016, Berry and Watkins executed an Operating Agreement for the newly formed JBM, LLC (hereinafter referred to as the

"Operating Agreement").

52.     The Operating Agreement contained several provisions to guarantee that Berry retained control over the Work and any marketing that could affect the Joy Berry Brand.

### GOETT AND BERRY

53.     In or around March 2016, Berry reached out to Vincent Goett whom she had met and briefly worked with through other colleagues several years before.  She reached out to him for assistance with finding capital to create a website that could successfully market and distribute the Work because Watkins had not produced the marketing or distribution of the Work and the Inspired sublicense had not yielded any progress either.

54.     Goett offered to create a corporation with Berry dedicated to the marketing and distribution of the Work which would raise capital from outside investors who would become shareholders of the corporation.

55.     Despite Watkins' failures, Berry decided to include him in the corporation because they had already been working together.

56.     It was agreed amongst Berry, Watkins and Goett that the three of them would all own equity in the corporation.

57.     It was further agreed amongst Berry, Watkins and Goett that the corporation would begin its efforts to market and distribute the Work by creating a viable website for that purpose.

58.     On December 15, 2016, the first licensing agreement between Berry, Goett and Watkins was executed, entitled "Master Licensing Agreement Between Joy Berry Media and Responsible Kids" (hereinafter referred to as the "2016 Agreement").  The parties to the 2016 Agreement were: Joy Berry on behalf of RK; V Media; Watkins on behalf of Educational

Publishing; Goett, on behalf of the soon to be formed JBMC; Berry on behalf of JBM, LLC and Watkins, on behalf of JBM, LLC.  The purpose of the Agreement was to grant a license to the soon to be formed JBMC.  JBMC was going to create a website to market and distribute the Work.

59.     On January 24, 2017, Goett formed JBMC under the laws of the State of Nevada. Upon information and belief, no corporate documents exist to govern the corporation.  In the records of the State of Nevada, Goett is listed as President, Secretary, Treasurer and Director of the corporation.

60.     Berry was given equity in JBMC.  In a proposal prepared for potential investors in JBMC, Berry was listed as Founder of JBMC with a twenty-one percent (21%) interest in the corporation.   Berry was also listed as ambassador to the corporation in New York in charge of product development and strategic planning.

61.     The 2016 Agreement provided Berry with control over the Work and use of her name and likeness.  It required that Berry be consulted regarding financing, marketing, positioning and branding issues sufficient to allow Berry to participate and have approval rights in the general strategy for exploitation of the Work and required that Berry approve the use of her name and likeness, and biographical material, in connection with the Work and any derivatives of the Work.

62.     As work began on the website, Goett shared plans with Berry for the website and Berry did not approve of them.  Goett had plans to create a "Berry Town" which would include a Children's Bank, the Goett Foundation, the Joy Berry Club, and a Christian Academy.  Berry did not approve of the Berry Town concept or the elements within it because they were not representative of the Joy Berry Brand.  Among other objections, Berry did not agree to the

following: providing banking advice to children because such advice was not representative of the Joy Berry Brand; the term "club" is a term of art in the publishing industry that refers to book clubs and the Work is of a much higher value; and, the Christian Academy was diametrically opposed to remaining non-denominational which is an integral part of the mission of the Joy Berry Brand.

63.     As work continued on the website, Watkins and Goett stopped consulting with Berry.

64.     Without Berry's knowledge or approval, Goett and Watkins proceeded to create a website named "Brite Star" (hereinafter referred to as the "Brite Star Website") rather than the Joy Berry Website.

65.     Brite Star is a corporation organized under the laws of the State of Nevada, established on December 27, 2017.  In the records of the State of Nevada, Vincent Goett is listed as the President, Secretary, Treasurer and President of the corporation.

66.     Based on the 2016 Agreement, Berry believed that Goett and Watkins were building the Joy Berry Website on behalf of JBMC in which she held an equity interest.

67.     Berry had no knowledge that the website being built, which would include the Work, was for a different corporation than JBMC.

68.     Any and all Internet searches for Joy Berry and any of the Work directed, and continue to direct, the user to the Brite Star Website.

69.     Any and all internet searches for KGP directed, and continue to direct, the user to the Brite Star Website.

70.     Upon information and belief, the Brite Star Website markets, promotes and sells other children's products that are unaffiliated with the Work and that compete with the Work.

71.     Upon information and belief, the Goett Defendants engaged Incrocci to copy and/or duplicate illustrations and characters from the Work for use on products marketed under competing titles and brands, such as "The Brite Star Kids," and Incrocci did copy and duplicate numerous artwork and characters from the Work.

72.     Berry was not consulted about, and did not approve of, how the Work would be marketed and distributed on the Brite Star Website.

73.     Berry was not consulted about, and did not approve of, how her name and likeness was being used in connection with the Brite Star Website, the Work and any derivatives of the Work.

74.     Berry was not consulted about, and did not approve of, the Work being marketed and distributed with other competing products.

75.     Berry was not consulted about, and did not approve of, the use of Incrocci alone or any of the artwork or illustrations that he created being used on or in connection to the Work or any other competing products.

76.     Berry was excluded from the development of the Brite Star Website and the representation of the Work on the Brite Star Website by Watkins and Goett.

77.     Berry immediately began to notify Goett and Watkins of all of the elements of the Brite Star Website that she did not approve of, including, but not limited to, use of the word club, outdated artwork, mistakes throughout the copy on the website, and competing products marketed along with the Work.

78.     Goett and Watkins did not make any changes in response to Berry's notifications.

79.     Berry was not provided with any royalty reports as required by the 2016 Agreement and she was not paid any royalties.

80.     In response to Berry's financial need and the lack of monies generated by the Brite Star Website, Goett offered Berry the opportunity to earn income as an independent contractor writing books for the Goett Foundation.  Berry agreed to write five books and to have Berry, Goett and Darilyne Goett listed as the authors.  A sublicense agreement for the books was entered into between Watkins on behalf of JBMC and JBM, LLC and Goett on behalf of the Goett Foundation (hereinafter referred to as the "Foundation Sublicense").  Berry was paid $10,000 as an advance against royalties to be generated by the books.

81.     Upon information and belief, per the Foundation Sublicense, royalty payments are due to Berry.  Berry has not received any royalty payments beyond the $10,000 advance.

82.     As Berry's representative pursuant to their 2008 Agreement, C. Beringer advised Berry throughout her negotiations, agreements, breaches and termination with Goett, Watkins, JBMC and Brite Star.

83.     On September 7, 2017, Berry executed a Management Agreement with the Beringer Group.  The services to be provided by the Beringer Group were to monitor the terms and conditions of any and all agreements between Berry and JBMC and to alert Berry of any non-compliance on the part of JBMC, as well as to oversee the financial records and reports of JBMC and alert and advise Berry of any impropriety with payments.

84.     Upon information and belief, any and all breaches of the Agreement between Berry and JBMC were discovered by Berry herself.  The Beringers did not alert Berry of any breaches or non-compliance by JBMC or Goett.

85.     On October 18, 2017, in compliance with the requirements of the 2016 Agreement, Berry sent email notifications of termination of the 2016 Agreement due to several material breaches by Goett and Watkins.  Among the noticed breaches were the failures by Goett

and Watkins to consult with Berry or obtain the required approvals for use of the Work on the Brite Star Website.

86.    In the notifications, Berry advised Goett and Watkins that their representation of the Work would irreparably harm the good name and reputation of the Work.

87.    In response to the above-described notifications, Goett urged Berry not to terminate and promised to rectify the breaches as well as address potential future breaches with an entirely new agreement.  Berry agreed to review Goett's proposal for a new agreement.

**THE 2017 AGREEMENT**

88.    On November 17, 2017, Berry emailed Goett a new proposed agreement after discussing points with him over the phone.  They proceeded to negotiate back and forth until the end of December 2017.

89.    The new licensing agreement was entered into on December 15, 2017 (hereinafter referred to as the "2017 Agreement").  The 2017 Agreement was executed by JBMC and RK.

90.    The 2017 Agreement, similar to the 2016 Agreement, provided Berry with control over the Work, its marketing and distribution.

91.    Pursuant to the express terms of the 2017 Agreement, $25,000 was to be paid within three days of the signing of the Agreement and $10,500 was to be paid to Berry on the first of each month.  Berry was paid $25,000 pursuant to the Agreement.

92.    Upon information and belief, Goett approached Beverly Hattersley to invest in Brite Star in or around 2017.  The terms of Beverly Hattersley's investment (hereinafter referred to as the "Hattersley Subscription Agreement") were negotiated by C. Beringer, Watkins and Goett.

93.    Berry had no knowledge of the terms of the Hattersley Subscription Agreement.

94.     On December 20, 2017, C. Beringer provided the terms upon which Beverly Hattersley was willing to invest in Brite Star:

> Immediate payment of $150,000 (the "initial payment") plus agreement to assign Company of all Notes from Joy Berry to Beverly (currently amounting to approximately $1,000,000) including accrued interest thereon) at such time as (Vince need your thoughts on "as such time) $150,000 is to be offset by Joy's royalties until such time as they equal $150,000 in 2018 calendar year.
>
> Beverly's Interest in Company: Beverly will be issued stock equal to a 10% interest in the Company at the time of her initial payment.

95.     Berry was never informed that the Beverly Hattersley investment was being used by Goett to fulfill the payments to Berry required by the 2017 Agreement.  Berry was informed only that the Beverly Hattersley loans she was receiving directly would stop at the end of 2017.

96.     Berry never agreed to assign the notes she owes Beverly Hattersley (hereinafter referred to as the "Hattersley Notes") to Brite Star.

97.     By assigning the Hattersley Notes to Brite Star, C. Beringer essentially created a relationship of indentured servitude for Berry with Brite Star.

98.     Pursuant to the express terms of the 2017 Agreement, JBMC was obligated to pay Berry $10,500 on January 1, 2018.

99.     On or around January 15, 2018, none of the breaches of the 2016 Agreement, intended to be cured by the 2017 Agreement, had been cured and there had been additional material breaches of the 2017 Agreement.

100.    On January 15, 2018, in compliance with the requirements of the 2017 Agreement, Berry sent notice of material breaches to Goett and Watkins (hereinafter referred to as the "January 15, 2018 Notice of Material Breaches").

101.    In or around January 2018, Goett and Watkins used Berry's music from the Work in connection with non-Work Brite Star Website content.

102.    Pursuant to the express terms of the 2017 Agreement, a material breach must be cured within sixty days of notice of the material breach to avoid termination of the Agreement. None of the breaches were cured.

103.    On or around February 2018, Brite Star began using artwork and characters from the Work, namely the Community Center Kids, in connection with Brite Star content and has renamed the characters from the Work the "Brite Star Kids."

104.    On February 1, 2018, no payment of $10,500 was made by JBMC to Berry.

105.    On February 5, 2018, Berry sent a second notice of material breaches of the 2017 Agreement to Goett and Watkins (hereinafter referred to as the "February 5, 2018 Notice of Material Breaches"). The materials breaches included, but were not limited to, failure to obtain Licensor's approvals regarding any modifications or representations of the Work, conducting updates to the Work without the approval of Licensor, failure to make payments to Licensor as required by the Agreement. Apart from the February payment of $10,500, which was paid later that month, the material breaches were never cured.

106.    On February 7, 2018, Watkins responded to the February 5, 2018 Notice of Material Breaches. Watkins stated that the payments to Berry required by the 2017 Agreement were contingent upon Watkins and Goett receiving a signed subscription agreement from Beverly Hattersley for an investment in Brite Star and that until the signed subscription agreement was received no future payments would be made.

107.    There exists no language in the 2017 Agreement making any payment to Berry contingent upon any investment or payment to JBMC by a third party.

22

108.    On February 7, 2018, Watkins sent an email to Berry in which he discussed in great detail the content which Goett and Watkins expected from Berry to further the Brite Star brand.  Due to her financial situation and having just gone through the effort of reaching a new agreement with them, Berry felt obligated to cooperate with Goett and Watkins.  Therefore, Berry reluctantly agreed to continue to work with them, and replied that she would like to do whatever she could to help them with Brite Star but would do nothing to compromise the value of her Work.  T. Beringer, who was copied on the email, wrote to Berry separately stating that "emails are public and permanent. It doesn't appear like your building bridges."

109.    On February 22, 2018, a payment was made to Berry for $10,500 from Brite Star.

110.    Having been paid in late February and in response to pressure to cooperate with Brite Star, Berry began to create the content for Brite Star requested by Watkins and Goett.  By March 16, 2018, Berry had completed all of the new content requested by Watkins and Goett which included thirteen short stories, a picture book, a book for older children, and a Brite Star game about feeling afraid.  Berry was not paid separately for any of this content.

111.    On March 1, 2018, no payment of $10,500 was made to Berry.

112.    On March 23, 2018, and March 25, 2018, Berry sent to Goett and Watkins a Notice to Cease and Desist Due to Licensee's Material Breaches of the 2017 Agreement.  The cease and desist provided that the Agreement would terminate unless Goett, Watkins and JBMC accounted for and paid all royalties due to Berry, complied with all terms of the 2017 Agreement and continued to be compliant.  The material breaches listed in the notifications were never cured.

113.    Pursuant to the express terms of the 2017 Agreement, JBMC was required to provide Berry with accountings of royalties and payment of royalties.  No accounting of royalties

was ever provided to Berry.  No payment of any royalties has ever been made to Berry.  Upon information and belief, there are royalty payments due to Berry.

114.    On or around June 2018, Beverly Hattersley cancelled her subscription agreement with Brite Star.

115.    On April 6, 2018, Berry sent DMCA Takedown notices to Internet service providers, including Shopify, Amazon, Google, Yahoo, Bing, AOL, PRECVER and Watkins Publishing House on the basis of Defendants' copyright infringement.

116.    On June 24, 2018, SBA resigned from working with Berry via email from C. Beringer.

## GOETT DEFENDANTS, KASEN DEFENDANTS AND THE INSPIRED SUBLICENSE

117.    As aforementioned in paragraph 48 of this Complaint the Inspired Sublicense was executed on September 5, 2015, between Berry, on behalf of the not yet formed JBM, LLC, Watkins, on behalf of the not yet formed JBM, LLC, and Kasen on behalf of Inspired.

118.    On January 12, 2017, Watkins, on behalf of JBMC, and Kasen, on behalf of Inspired, executed a cancellation agreement to cancel the Inspired Sublicense.  JBMC was not a party to the Inspired Sublicense.

119.    On October 27, 2017, an Assignment and Acquisition Agreement of the Sublicense was executed by Goett on behalf of JBMC and Kasen on behalf of Inspired.

120.    Berry had no knowledge of the Assignment Agreement and it was executed days after Berry sent notice for the termination of her 2016 licensing agreement with Goett, Watkins and JBMC.

121.    Berry did not agree to transfer the Inspired sublicense to parties with whom she was seeking to end her professional relationship, *i.e.*, Goett, Watkins and JBMC.

122. Language was included in the 2017 Agreement to transfer the Inspired Sublicense to JBMC. Berry agreed to this transfer upon executing the 2017 Agreement.

123. As discussed in paragraphs 98 and 103 herein, Berry had sent notices of material breaches to Goett and Watkins. All but one of the breaches remained uncured. Therefore, based on the termination of the 2017 Agreement due to JBMC's failure to cure the material breaches of the 2017 Agreement, on March 23, 2018, Berry sent a Cease and Desist letter to JBMC, demanding that JBMC cease all further use of the Work, the Joy Berry Brand and any other associated materials. To date, such use continues and has not ceased.

124. Any rights of JBMC in or to the Inspired Sublicense terminated with the termination of the 2017 Agreement.

125. The 2017 Agreement includes language which terminated any and all rights of the licensee upon termination, including, but not limited to, the following:

> 2. Stipulations (j)
> All of the rights that inure to the benefit of the Licensee as put forth in the Agreement shall be contingent on Licensee's compliance with each and every term and condition put forth in this Agreement as well as every written amendment to this Agreement that is mutually agreed upon by both parties.

126. On May 1, 2018, a fourth agreement was executed by Goett on behalf of Brite Star and Kasen on behalf of Inspired to transfer and assign the Inspired Sublicense. This Agreement was executed without Berry's knowledge or approval.

127. On June 12, 2018, despite the fact that the Inspired Sublicense had already been terminated, Berry also sent notification to Kasen of termination of the Inspired Sublicense due to material breaches. Had the Inspired Sublicense not already been terminated prior to Berry's notification, it would have been terminated on July 12, 2018, due to failure to cure material breaches within thirty days of the notice provided.

## THE GOETT FOUNDATION

128.     The Goett Foundation is using the term the "Joy Berry Club" which Berry has opposed because the word "club" has a connotation that does not apply to the Work and lessens its value.

129.     Berry's artwork is being used in conjunction with the "Joy Berry Club" artwork that Berry opposed because it is dated and lessens the value of the Work.

130.     The Brite Star Website, as of November 21, 2018, has offered and continues to offer, and upon information and belief, has distributed and continues to distribute, elements of the Work to educators without payment.

131.     Upon information and belief, the Goett Foundation claims to be paying Brite Star for the purchase prices of elements of the Work to enable Brite Star to distribute them at no cost to certain pre-schools and schools chosen by the Goett Foundation and Brite Star to receive them at no cost.  On the Brite Star Website there is a banner stating that "The Goett Foundation offers the Complete Joy Berry Library free to qualified schools and preschools," followed by a list of different packages and their value.

132.     One of the different packages listed as part of the offer to receive the Joy Berry Library for free is an "Early Christian Package" which is not part of the Work and is in direct conflict with the Joy Berry Brand.

## SO HI AND BRITE STAR

133.     SO HI appears to be a relatively new company started by Goett.  On its website is a link to "Brite Star World Education."  This link goes to the Brite Star Website.

134.     As noted hereinabove, the Brite Star Website is using the Joy Berry Brand and the Work without the authorization of Plaintiffs.

135.   Upon information and belief, SO HI is benefiting from and contributing to the unlawful activities of the Brite Star Website and the Goett Defendants.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement)
### (Against the Goett Defendants and the Inspired Defendants)

136.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 135 of their complaint as if fully set forth herein.

137.   This claim arises under the United States Copyright Act of 1976 (the "Copyright Act").

138.   Pursuant to the various agreements discussed elsewhere herein, the Goett Defendants and the Inspired Defendants had access to all of Plaintiffs' Work, including the Copyrights.

139.   Subsequent to May 24, 2018 (the latest date of termination of the 2017 Agreement) and July 12, 2018 (the latest date of termination of the Inspired Agreement), the Goett Defendants and the Inspired Defendants have continued to display, offer for sale, sell and distribute copies of the Work, including the Copyrights, and to incorporate elements thereof into other works, all without the authorization of Plaintiffs (the "Infringing Acts").

140.   The Infringing Acts constitute willful copyright piracy in that the Goett Defendants and the Inspired Defendants have copied elements of the Copyrights into other works and falsely claimed authorship or ownership thereof.

141.   By virtue of their relationships with Plaintiffs and the various agreements between the parties, the Goett Defendants and the Inspired Defendants either knew or should have known that the Joy Berry Classics were subject to copyright protection, and that, accordingly, a license was required for use of any copyright protected elements thereof.

142.   Upon information and belief, the Goett Defendants and the Inspired Defendants have knowingly and willfully engaged and continue to engage in the Infringing Acts.

143.   Plaintiffs are informed and believe, and on that basis further allege, that the Goett Defendants and the Inspired Defendants have infringed and threaten to further infringe upon Plaintiffs' Work by being the source of the works infringed, and aiding and abetting others in the manufacturing, distributing, offering for sale and/or selling copies of, licensing, and/or otherwise commercially exploiting the Plaintiffs' Work, and contributing to the infringement of Plaintiffs' Work by others, in the Eastern District of New York and elsewhere in the world, all without the consent or authorization of either Plaintiffs or anyone authorized to act on their behalf.

144.   The Infringing Acts by the Goett Defendants and the Inspired Defendants and others with their aid and assistance, and/or as a direct result of their direct, contributory and vicarious actions, constitute an unauthorized distribution of copies of Plaintiffs' copyrighted Work, and the public performance of the infringing musical compositions derived from the Work by the Goett Defendants and the Inspired Defendants constitutes an unauthorized public performance of Plaintiffs' copyrighted Work, all in violation of Plaintiffs' rights under the Copyright Act.

145.   Upon information and belief, the Goett Defendants and the Inspired Defendants, as a result of their Infringing Acts, have obtained gains, profits, and advantages as a result of their direct, contributory and/or vicarious copyright infringement of Plaintiffs' Work.

146.   Plaintiffs are informed and believe, and on that basis allege, that the Infringing Acts by the Goett Defendants and the Inspired Defendants have been and continue to be carried out with their full knowledge that the Plaintiffs' Work is protected by copyright and that at all relevant times the Goett Defendants and the Inspired Defendants had actual and constructive

knowledge of Plaintiffs' rights but proceeded in complete disregard thereof.  The Goett Defendants and the Inspired Defendants have willfully and intentionally infringed Plaintiffs' copyright in Plaintiffs' Work by doing the Infringing Acts complained of herein.

147.   Upon information and belief, the Infringing Acts by the Goett Defendants and the Inspired Defendants have been and are continuing by virtue of at least: (a) the continued display of the Work and elements thereof on the websites operated by the Goett Defendants and the Inspired Defendants; (b) the continued offering for sale, sale and/or distribution of the Work and elements thereof; and, (c) the continuing unauthorized use of the Work and the Copyrights to promote and sell other products and services, including, among others, Brite Star products, club memberships and resources through the www.britestarstore.com website, and to promote the Goett Foundation.

148.   Plaintiffs have suffered and continue to suffer irreparable harm and injury as a result of the aforesaid Infringing Acts of the Goett Defendants and the Inspired Defendants and Plaintiffs are without an adequate remedy at law, in that damages are extremely difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Plaintiffs will be required to pursue a multiplicity of actions.

149.   Plaintiffs have sustained damages as a result of wrongful acts of the Goett Defendants and the Inspired Defendants as hereinabove alleged.  Plaintiffs are presently unable to ascertain the full extent of the money damages they have suffered by reason of said acts of copyright infringement, but upon information and belief such damages exceed $1,000,000 as to each work infringed as to each of the Goett Defendants and the Inspired Defendants.

150.   Plaintiffs are informed and believe, and on that basis allege, that the Goett Defendants and the Inspired Defendants have obtained gains, profits, and advantages as a result

of their Infringing Acts as hereinabove alleged.  Plaintiffs are presently unable to ascertain the full extent of the gains, profits, and advantages the Goett Defendants and the Inspired Defendants have obtained by reason of their aforesaid acts of copyright infringement, but upon information and belief such gains, profits, and advantages exceed $1,000,000 as to each work infringed as to each of the Goett Defendants and the Inspired Defendants.

**SECOND CLAIM FOR RELIEF**
**(Unfair Competition)**
**(False Designation of Origin Under Section 43(a)**
**of The Lanham Act, 15 U.S.C. § 1125(a))**
**(Against the Goett Defendants and the Inspired Defendants)**

151.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 150 of their complaint as if fully set forth herein.

152.   Upon information and belief, the domain names www.britestarstore.com and www.joyberrybooks.com are owned and/or operated by one or more of the Goett Defendants and/or the Inspired Defendants.   The domain name www.joyberrybooks.com points to www.britestarstore.com.  That is, when one attempts to go to the website located at the URL www.joyberrybooks.com, one arrives at the website www.britestarstore.com.  Moreover, any search for Joy Berry, such as through Google, produces search results showing www.britestarstore.com as the source of her Work.

153.   Throughout the www.britestarstore.com website and in other promotional materials (including, but not limited to, its social media pages), the Goett Defendants and/or the Inspired Defendants display Plaintiff Berry's name, and otherwise associate the website and its contents and product offerings with Plaintiffs, thus causing a likelihood of consumer confusion as to the source, sponsorship and/or affiliation of the website and its contents and product offerings with Plaintiffs.

154.     Since the beginning of their relationships with Plaintiffs, the Goett Defendants and the Inspired Defendants have had actual and constructive knowledge of Plaintiffs' rights in the Joy Berry Brand as a result of Berry's long and successful career, extensive publications and reputation as a pioneer in the field of children's educational and developmental books.  This is evidenced by the continuing copyright Infringing Acts alleged elsewhere herein.  Further, the Goett Defendants and the Inspired Defendants have had actual knowledge of Plaintiffs' rights in the Joy Berry Brand since at least as early as 2012.  Moreover, the Goett Defendants and the Inspired Defendants have had actual and constructive knowledge of Plaintiffs' objections to any and all continued use of the Joy Berry Brand in connection with the Infringing Acts since at least as early as March 23, 2018.

155.     The knowing and intentional infringement of the Joy Berry Brand by the Goett Defendants and the Inspired Defendants has been willful, and continues to cause confusion among consumers as to the source, sponsorship and/or affiliation of the www.britestarstore.com website and its contents and product offerings with Plaintiffs.  The Infringing Acts of the Goett Defendants and the Inspired Defendants have irreparably harmed and continue to irreparably harm Plaintiffs' reputation and the Joy Berry Brand.

156.     The Infringing Acts of the Goett Defendants and the Inspired Defendants as alleged herein violate Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

157.     The use of the Joy Berry Brand by the Goett Defendants and the Inspired Defendants in connection with the www.britestarstore.com website and its contents and product offerings falsely suggests that the www.britestarstore.com website and its contents and product offerings are connected with, sponsored by, affiliated with or related to Plaintiffs.

158.     Neither of Plaintiffs, nor any person or entity authorized to act on their behalf, has

consented to the Goett Defendants' and the Inspired Defendants' use of the Joy Berry Brand and neither of Plaintiffs, nor any person or entity authorized to act on their behalf, has authorized the Goett Defendants' and the Inspired Defendants' Infringing Acts, including without limitation on or in connection with the www.britestarstore.com website and its contents and product offerings.

159.    The Goett Defendants' and the Inspired Defendants' unauthorized use of the Joy Berry Brand constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

160.    The Goett Defendants and the Inspired Defendants had actual knowledge of Plaintiffs' rights in the Joy Berry Brand prior to using, or continuing to use, the Joy Berry Brand.

161.    Upon information and belief, the Goett Defendants' and the Inspired Defendants' activities as described above have been willful, wanton, and in deliberate disregard of Plaintiffs' trademark rights, and for the purpose of intentionally misappropriating and capitalizing on Plaintiffs' goodwill.

162.    The willful and intentional nature of their acts and the reckless disregard of the most basic level of diligence by the Goett Defendants and the Inspired Defendants makes this an exceptional case pursuant to 15 U.S.C. § 1117(a), and, accordingly, Plaintiffs are entitled to an accounting for profits, the Goett Defendants' and the Inspired Defendants' profits, actual damages, costs and reasonable attorneys' fees.

163.    As a result of the Goett Defendants' and the Inspired Defendants' unfair competition as alleged herein, Plaintiffs have suffered damages in an amount to be determined at trial.

164.    Upon information and belief, the Goett Defendants and the Inspired Defendants have gained profits by virtue of their unfair competition as alleged herein.

165.    Plaintiffs have suffered and will continue to suffer irreparable harm to their

business, reputation and goodwill as a result of the Goett Defendants' and the Inspired Defendants' actions, and Plaintiffs lack an adequate remedy at law to compensate them for this harm and damage.  Accordingly, Plaintiffs are entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

**THIRD CLAIM FOR RELIEF**
**(Unfair Competition)**
**(False Designation of Origin Under Section 43(a)**
**of The Lanham Act, 15 U.S.C. § 1125(d))**
**(Against the Goett Defendants and the Inspired Defendants)**

166.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 165 of their complaint as if fully set forth herein.

167.    Upon information and belief, the Goett Defendants and/or the Inspired Defendants have registered and are using the domain name www.joyberrybooks.com which incorporates the Joy Berry Brand, and are using this domain name in connection with their Infringing Acts complained of elsewhere herein in violation of 15 U.S.C. § 1125(d).

168.    The use of the Joy Berry Brand by the Goett Defendants and the Inspired Defendants in connection with the www.britestarstore.com website and its contents and product offerings falsely suggests that the www.britestarstore.com website and its contents and product offerings are connected with, sponsored by, affiliated with or related to Plaintiffs.

169.    Neither of Plaintiffs, nor any person or entity authorized to act on their behalf, has consented to the Goett Defendants' and the Inspired Defendants' use of the Joy Berry Brand and neither of Plaintiffs, nor any person or entity authorized to act on their behalf, has authorized the Goett Defendants' and the Inspired Defendants' Infringing Acts, including without limitation on or in connection with the www.britestarstore.com website and its contents and product offerings.

170.    The Goett Defendants' and the Inspired Defendants' unauthorized use of the Joy

Berry Brand constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

171.    The Goett Defendants and the Inspired Defendants had actual knowledge of Plaintiffs' rights in the Joy Berry Brand prior to using, or continuing to use, the Joy Berry Brand.

172.    Upon information and belief, the Goett Defendants' and the Inspired Defendants' activities as described above have been willful, wanton, and in deliberate disregard of Plaintiffs' trademark rights, and for the purpose of intentionally misappropriating and capitalizing on Plaintiffs' goodwill.

173.    The willful and intentional nature of their acts and the reckless disregard of the most basic level of diligence by the Goett Defendants and the Inspired Defendants makes this an exceptional case pursuant to 15 U.S.C. § 1117(a), and, accordingly, Plaintiffs are entitled to an accounting for profits, the Goett Defendants' and the Inspired Defendants' profits, actual damages, costs and reasonable attorneys' fees.

174.    As a result of the Goett Defendants' and the Inspired Defendants' unfair competition and cyberpiracy as alleged herein, Plaintiffs have suffered damages in an amount to be determined at trial.

175.    Upon information and belief, the Goett Defendants and the Inspired Defendants have gained profits by virtue of their unfair competition and acts of cyberpiracy related thereto as alleged herein.

176.    Plaintiffs have suffered and will continue to suffer irreparable harm to their business, reputation and goodwill as a result of the Goett Defendants' and the Inspired Defendants' actions, and Plaintiffs lack an adequate remedy at law to compensate them for this harm and damage.  Accordingly, Plaintiffs are entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

### FOURTH CLAIM FOR RELIEF
#### (Unlawful Deceptive Acts and Practices
#### Under N.Y. Gen. Bus. Law§ 349(a))
#### (Against the Goett Defendants and the Inspired Defendants)

177.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 176 of their complaint as if fully set forth herein.

178.    The Goett Defendants and the Inspired Defendants have knowingly and intentionally manufactured, distributed, offered for sale and sold and continue to manufacture, offer for sale and sell infringing copies of the Plaintiffs' Work by, among other things, improperly using the Joy Berry Brand.

179.    The Goett Defendants' and the Inspired Defendants' infringing sales and use of the Joy Berry Brand are without the consent of Plaintiffs or any person or entity authorized to act on their behalf.

180.    The Goett Defendants' and the Inspired Defendants' acts complained of herein are materially misleading and, directed at consumers, have misled, continue to mislead and/or are likely to mislead reasonable consumers as to the origin of the contents and product offerings on the Goett Defendants' and the Inspired Defendants' websites, and have deceived, continue to deceive and/or are likely to deceive the public into believing that the Goett Defendants' and the Inspired Defendants' websites and their contents and product offerings originate from, are associated with or are otherwise authorized or endorsed by Plaintiffs, when such is not the case.

181.    The Goett Defendants' and the Inspired Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

182.    The Goett Defendants and the Inspired Defendants had knowledge of the Plaintiffs' rights in the Joy Berry Brand and Plaintiff Berry's copyrights in the Work when they began using the Joy Berry Brand, and when they began manufacturing, distributing, offering for

sale and selling the copies of the Work or elements thereof, and the Goett Defendants and the Inspired Defendants have not ceased their improper use of the Joy Berry Brand nor have they ceased their copyright Infringing Acts in response to Plaintiff Berry's clear objections.  As such, the Goett Defendants' and the Inspired Defendants' infringement has been and continues to be intentional, willful and without regard to Plaintiffs' rights in the Joy Berry Brand and the Work.  Accordingly, Plaintiffs are entitled to an accounting for profits, enhanced profits and damages, actual damages, costs and reasonable attorneys' fees.

183.    Upon information and belief, the Goett Defendants' and the Inspired Defendants' activities as described above have been willful, wanton, and in deliberate disregard of Plaintiffs' trademark rights, and for the purpose of intentionally misappropriating and capitalizing on Plaintiffs' goodwill.

184.    As a result of the Goett Defendants' and the Inspired Defendants' acts complained of herein, Plaintiffs have suffered damages in an amount to be determined at trial.

185.    Upon information and belief, the Goett Defendants and the Inspired Defendants have gained profits by virtue of their deceptive acts and practices.

186.    Plaintiffs have suffered and will continue to suffer irreparable harm to their business, reputation and goodwill as a result of the Goett Defendants' and the Inspired Defendants' actions, and Plaintiffs lack an adequate remedy at law to compensate for this harm and damage.  Accordingly, Plaintiffs are entitled to an injunction by the Court.

### FIFTH CLAIM FOR RELIEF
### (Trademark Dilution and Injury to Business
### Reputation Under N.Y. Gen. Bus. Law§ 360-1)
### (Against the Goett Defendants and the Inspired Defendants)

187.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 186 of their complaint as if fully set forth herein.

188.    Plaintiffs have extensively and continuously promoted and used the Joy Berry Brand in the United States, and this mark has become distinctive and a well-known symbol of Plaintiffs' products and services.

189.    The Goett Defendants' and the Inspired Defendants' unauthorized use of the Joy Berry Brand is likely to injure Plaintiffs' business reputation, and dilutes and is likely to dilute the distinctive quality of Plaintiffs' Joy Berry Brand by eroding the public's exclusive identification of the Joy Berry Brand with Plaintiffs and by lessening the capacity of the mark to identify and distinguish Plaintiffs' goods and services.

190.    The Goett Defendants' and the Inspired Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' Joy Berry Brand.

191.    The Goett Defendants and the Inspired Defendants are causing and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation in violation of N.Y. Gen. Bus. Law § 360-1, and Plaintiffs are entitled to injunctive relief.

**SIXTH CLAIM FOR RELIEF**
**(Common Law Trademark Infringement and Unfair Competition)**
**(Against the Goett Defendants and the Inspired Defendants)**

192.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 191 of their complaint as if fully set forth herein.

193.    The Goett Defendants and the Inspired Defendants are falsely representing that their website and its contents and product offerings emanate from or have been approved by Plaintiffs while placing the quality of such products beyond the Plaintiffs' control.  Accordingly, the use of Plaintiffs' Work and the Joy Berry Brand constitutes a false designation of origin and false description of representation that the Goett Defendants' and the Inspired Defendants'

products originate from, or are offered, sponsored, authorized, licensed by, or otherwise connected with Plaintiffs, and is thereby likely to confuse customers.

194.    As a result of the Goett Defendants' and the Inspired Defendants' conduct, the public is likely to believe that the Goett Defendants' and the Inspired Defendants' website and products are sponsored by or otherwise affiliated with Plaintiffs.

195.    The Goett Defendants' and the Inspired Defendants' conduct is gross, wanton, and willful, and is intended to reap the benefit of Plaintiffs' goodwill in the Joy Berry name, and constitutes common law trademark infringement and unfair competition.

196.    As a result of the Goett Defendants' and the Inspired Defendants' unlawful actions, Plaintiffs are entitled to injunctive relief, an award of their actual damages, and an accounting of any profits enjoyed by the Goett Defendants and the Inspired Defendants as a result of their unlawful conduct.  Moreover, due to the Goett Defendants' and the Inspired Defendants' gross, wanton, willful fraud, and other morally culpable conduct, Plaintiffs are entitled to punitive damages.

**SEVENTH CLAIM FOR RELIEF**
**(Unfair Competition)**
**(False Designation of Origin Under Section 43(a)**
**of The Lanham Act, 15 U.S.C. § 1125(a))**
**(Against the Goett Defendants, Defendant Incrocci and the Inspired Defendants)**

197.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 196 of their complaint as if fully set forth herein.

198.    Plaintiffs' "Classics" series of books and derivative works, the "Community Center Kids" series of books and derivative works (the "CCK"), and the "KGP" series of books and derivative works, and all of the characters, artwork and stories associated therewith (hereinafter referred to collectively as the "Joy Berry Character Trademarks") are inherently

distinctive and have acquired distinctiveness. The Joy Berry Character Trademarks are widely recognized and relied upon by consumers to identify Plaintiffs' products, and to distinguish them from the goods and services of others. Through Plaintiffs' extensive and exclusive use, advertising and promotional efforts, and, as a direct result of the considerable time, effort and money Plaintiffs have expended on the advertising, promotion and sale of products bearing and in connection with the Joy Berry Character Trademarks in the United States, the Joy Berry Character Trademarks have become well-known, distinctive, famous and associated with Plaintiff Berry.

199. Upon information and belief, the Goett Defendants and/or the Inspired Defendants have used and are using the Joy Berry Character Trademarks in connection with their Infringing Acts complained of elsewhere herein in violation of 15 U.S.C. § 1125(a).

200. The use of the Joy Berry Character Trademarks by the Goett Defendants and the Inspired Defendants in connection with the www.britestarstore.com website and its contents and product offerings falsely suggests that the www.britestarstore.com website and its contents and product offerings are connected with, sponsored by, affiliated with or related to Plaintiffs.

201. The Goett Defendants' and the Inspired Defendants' actions are likely to cause consumers and the public to mistakenly believe that Plaintiffs have manufactured, sponsored, authorized, and/or licensed the Goett Defendants' and the Inspired Defendants' products and services and/or that the Goett Defendants' and the Inspired Defendants' products and services are being distributed by a distributor authorized by Plaintiffs, and are likely to damage the reputation and goodwill previously established by Plaintiffs in authorized products bearing the Joy Berry Trademarks.

202. Neither of Plaintiffs, nor any person or entity authorized to act on their behalf, has

consented to the Goett Defendants' and the Inspired Defendants' use of the Joy Berry Character Trademarks and neither of Plaintiffs, nor any person or entity authorized to act on their behalf, has authorized the Goett Defendants' and the Inspired Defendants' Infringing Acts, including without limitation on or in connection with the www.britestarstore.com website and its contents and product offerings.

203.    The Goett Defendants' and the Inspired Defendants' unauthorized use of the Joy Berry Character Trademarks constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

204.    The Goett Defendants and the Inspired Defendants had actual knowledge of Plaintiffs' rights in the Joy Berry Character Trademarks prior to using, or continuing to use, the Joy Berry Character Trademarks.

205.    Upon information and belief, the Goett Defendants' and the Inspired Defendants' activities as described above have been willful, wanton, and in deliberate disregard of Plaintiffs' trademark rights, and for the purpose of intentionally misappropriating and capitalizing on Plaintiffs' goodwill.

206.    The unlawful use of the CCK characters, artwork and stories represents one of the most egregious acts of the Goett Defendants and the Inspired Defendants.  They have copied and appropriated them to their own use by creating and offering for sale competing books and materials under the title "Brite Star Kids."  In addition, they have blatantly listed Vincent Goett as the author of one or more of these books.

207.    The Goett Defendants and the Inspired Defendants can offer no defense to such intentional acts.  There is no right allowing for this under the 2017 Agreement, which agreement Goett has admitted is terminated.  Moreover, the Goett Defendants and the Inspired Defendants

cannot assert that they have rights to do these infringing acts from the Inspired Sublicense, since this agreement is specifically limited to the Classics, and not the CCK. Therefore, at least infringement of Plaintiffs' rights in the CCK is without question, and the Goett Defendants and the Inspired Defendants may be subject to an immediate judgment therefor and permanent injunction.

208.    Even more egregious is the fact that the Goett Defendants were obligated pursuant to the 2017 Agreement to register and protect copyrights and trademarks in the Work. They met none of these obligations. Indeed, rather than meeting these obligations, they chose to misappropriate these intellectual property rights to themselves and intentionally infringe them.

209.    Defendant Incrocci has directly and indirectly willfully participated in the Infringing Acts by copying and duplicating CCK artwork, characters and stories without any authorization from either of Plaintiffs, or anyone authorized to act on their behalf.

210.    Upon information and belief, Defendant Incrocci's activities as described above have been willful, wanton, and in deliberate disregard of Plaintiffs' trademark rights, and for the purpose of intentionally misappropriating and capitalizing on Plaintiffs' goodwill. By his acts, Defendant Incrocci further aided and abetted the unlawful acts of the Goett Defendants and the Inspired Defendants.

211.    The willful and intentional nature of their acts and the reckless disregard of the most basic level of diligence by the Goett Defendants and the Inspired Defendants makes this an exceptional case pursuant to 15 U.S.C. § 1117(a), and, accordingly, Plaintiffs are entitled to an accounting for profits, the Goett Defendants' and the Inspired Defendants' profits, actual damages, costs and reasonable attorneys' fees.

212.    As a result of the Goett Defendants', Incrocci's and the Inspired Defendants'

unfair competition as alleged herein, Plaintiffs have suffered damages in an amount to be determined at trial.

213.    Upon information and belief, the Goett Defendants, Incrocci and the Inspired Defendants have gained profits by virtue of their unfair competition as alleged herein.

214.    Plaintiffs have suffered and will continue to suffer irreparable harm to their business, reputation and goodwill as a result of the Goett Defendants', Incrocci's and the Inspired Defendants' actions, and Plaintiffs lack an adequate remedy at law to compensate for this harm and damage.  Accordingly, Plaintiffs are entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

**EIGHTH CLAIM FOR RELIEF**
**(Unlawful Deceptive Acts and Practices**
**Under N.Y. Gen. Bus. Law§ 349(a))**
**(Against the Goett Defendants and the Inspired Defendants)**

215.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 214 of their complaint as if fully set forth herein.

216.    The Goett Defendants and the Inspired Defendants have knowingly and intentionally manufactured, distributed, offered for sale and sold and continue to manufacture, offer for sale and sell infringing copies of the Plaintiffs' Joy Berry Character Trademarks.

217.    The Goett Defendants' and the Inspired Defendants' infringing sales and use of the Joy Berry Character Trademarks are without the consent of Plaintiffs or any person or entity authorized to act on their behalf.

218.    The Goett Defendants' and the Inspired Defendants' acts complained of herein are materially misleading and, directed at consumers, have misled, continue to mislead and/or are likely to mislead reasonable consumers as to the origin of the Goett Defendants' and the Inspired Defendants' websites and their contents and product offerings, and have deceived, continue to

deceive and/or are likely to deceive the public into believing that the Goett Defendants' and the Inspired Defendants' websites and their contents and product offerings originate from, are associated with or are otherwise authorized or endorsed by Plaintiffs, when such is not the case.

219. The Goett Defendants' and the Inspired Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

220. The Goett Defendants and the Inspired Defendants had knowledge of the Plaintiffs' rights in the Joy Berry Character Trademarks when they began using the Joy Berry Character Trademarks and confusingly similar copies thereof, and when they began manufacturing, distributing, offering for sale and selling the copies of the Work or elements thereof, and the Goett Defendants and the Inspired Defendants have not ceased their improper use of the Joy Berry Character Trademarks in response to Plaintiff Berry's clear objections. As such, the Goett Defendants' and the Inspired Defendants' infringement has been and continues to be intentional, willful and without regard to Plaintiffs' rights in the Joy Berry Character Trademarks. Accordingly, Plaintiffs are entitled to an accounting for profits, enhanced profits and damages, actual damages, costs and reasonable attorneys' fees.

221. Upon information and belief, the Goett Defendants' and the Inspired Defendants' activities as described above have been willful, wanton, and in deliberate disregard of Plaintiffs' trademark rights, and for the purpose of intentionally misappropriating and capitalizing on Plaintiffs' goodwill.

222. As a result of the Goett Defendants' and the Inspired Defendants' acts complained of herein, Plaintiffs have suffered damages in an amount to be determined at trial.

223. Upon information and belief, the Goett Defendants and the Inspired Defendants have gained profits by virtue of their deceptive acts and practices.

224.   Plaintiffs have suffered and will continue to suffer irreparable harm to their business, reputation and goodwill as a result of the Goett Defendants' and the Inspired Defendants' actions, and Plaintiffs lack an adequate remedy at law to compensate for this harm and damage.  Accordingly, Plaintiffs are entitled to an injunction by the Court.

**NINTH CLAIM FOR RELIEF**
**(Trademark Dilution and Injury to Business**
**Reputation Under N.Y. Gen. Bus. Law§ 360-1)**
**(Against the Goett Defendants and the Inspired Defendants)**

225.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 224 of their complaint as if fully set forth herein.

226.   Plaintiffs have extensively and continuously promoted and used the Joy Berry Character Trademarks in the United States, and these marks have become distinctive and well-known symbols of Plaintiffs' products.

227.   The Goett Defendants' and the Inspired Defendants' unauthorized use of the Joy Berry Character Trademarks is likely to injure Plaintiffs' business reputation, and dilutes and is likely to dilute the distinctive quality of Plaintiffs' Joy Berry Character Trademarks by eroding the public's exclusive identification of the Joy Berry Character Trademarks with Plaintiffs and by lessening the capacity of the mark to identify and distinguish Plaintiffs' goods and services.

228.   The Goett Defendants' and the Inspired Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' Joy Berry Character Trademarks.

229.   The Goett Defendants and the Inspired Defendants are causing and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation in violation of N.Y. Gen. Bus. Law § 360-1, and Plaintiffs are entitled to injunctive relief.

## TENTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition)
### (Against the Goett Defendants, Defendant Incrocci and the Inspired Defendants)

230. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 229 of their complaint as if fully set forth herein.

231. The Goett Defendants and the Inspired Defendants are falsely representing that their website and its contents and product offerings, including the Joy Berry Character Trademarks and confusingly similar copies thereof emanate from or have been approved by Plaintiffs while placing the quality of such products beyond the Plaintiffs' control. Accordingly, the use of Plaintiffs' Joy Berry Character Trademarks constitutes a false designation of origin and false description of representation that the Goett Defendants' and the Inspired Defendants' products originate from, or are offered, sponsored, authorized, licensed by, or otherwise connected with Plaintiffs, and is thereby likely to confuse customers.

232. As a result of the Goett Defendants' and the Inspired Defendants' conduct, the public is likely to believe that the Goett Defendants' and the Inspired Defendants' website and products are sponsored by or otherwise affiliated with Plaintiffs.

233. The Goett Defendants' and the Inspired Defendants' conduct is gross, wanton, and willful, and is intended to reap the benefit of Plaintiffs' goodwill in the Joy Berry Character Trademarks, and constitutes common law trademark infringement and unfair competition.

234. Defendant Incrocci has directly and indirectly willfully participated in the Infringing Acts by copying and duplicating CCK artwork, characters and stories without any authorization from either of Plaintiffs, or anyone authorized to act on their behalf.

235. Upon information and belief, Defendant Incrocci's activities as described above have been willful, wanton, and in deliberate disregard of Plaintiffs' trademark rights, and for the

purpose of intentionally misappropriating and capitalizing on Plaintiffs' goodwill. By his acts, Defendant Incrocci further aided and abetted the unlawful acts of the Goett Defendants and the Inspired Defendants.

236. As a result of the Goett Defendants' and the Inspired Defendants' unlawful actions, Plaintiffs are entitled to injunctive relief, an award of their actual damages, and an accounting of any profits enjoyed by the Goett Defendants and the Inspired Defendants as a result of their unlawful conduct. Moreover, due to the Goett Defendants' and the Inspired Defendants' gross, wanton, willful fraud, and other morally culpable conduct, Plaintiffs are entitled to punitive damages.

## ELEVENTH CLAIM FOR RELIEF
### (Conversion)
### (Against the Goett Defendants and the Inspired Defendants)

237. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 236 of their complaint as if fully set forth herein.

238. The Goett Defendants and the Inspired Defendants falsely represent that they are the exclusive source of all Joy Berry Brand products. On the www.britestarstore.com website they allege that "Brite Star Media is proud to be the exclusive distributor of the Joy Berry Classics and you will find all the Classics as well as thousands of additional resources in the Brite Star Learning Network." In addition, the Goett Defendants and the Inspired Defendants have infringed and continue to infringe Plaintiffs' rights in the Joy Berry Brand, and the Joy Berry Character Trademarks by, among other things, misappropriating them to their own use, including derivative works therefrom. Moreover, upon information and belief, the Goett Defendants and the Inspired Defendants have programmed the www.britestarstore.com website so that anyone searching for works by Joy Berry will be directed or redirected to only this

website.

239.    By virtue of the unlawful acts set forth above and elsewhere herein, the Goett Defendants and the Inspired Defendants have willfully and intentionally interfered with Plaintiffs' exclusive rights in the Work, the Joy Berry Brand and the Joy Berry Character Trademarks, and have unlawfully exercised exclusive possession thereof to the exclusion of Plaintiffs' lawful rights of possession.

240.    Further, by virtue of their unlawful acts, the Goett Defendants and the Inspired Defendants have unlawfully accrued to themselves the revenues generated from the commercial use of the Work, the Joy Berry Brand and the Joy Berry Character Trademarks, and thereby have willfully converted the monies which are lawfully the property of Plaintiffs to their own use and benefit and to the detriment and damage of Plaintiffs.

241.    As a result of their willful conversion, the Goett Defendants and the Inspired Defendants are obligated to Plaintiffs in the amount of at least Two Million Dollars ($2,000,000).

### TWELFTH CLAIM FOR RELIEF
### (Fraud)
### (Against Defendant Goett with Respect to the 2016 Agreement)

242.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 241 of their complaint as if fully set forth herein.

243.    As an inducement to enter into the 2016 Agreement, on or about November 4, 2016, by means of among other things a document comprised of Cash Flow Projections and Financial Summary (the "JBMC Business Proposal") and verbal discussions related thereto, Defendant Goett represented to Plaintiff Berry that he would form JBMC and that, among other things, (a) Plaintiff Berry would have a 21% ownership therein, (b) she would receive a salary of

$48,000 in the first year and a salary of $72,000 in the second year, (c) she would serve as company Founder and Ambassador and be responsible for Product Development and Strategic Planning, (d) she would maintain control over the Work, and (e) JBMC could and would market and distribute the licensed goods throughout the United States.   At the time of such representations, Defendant Goett knew or should have known that Plaintiffs would rely upon such representations.   Upon information and belief, at the time such representation was made, Defendant Goett knew or should have known that he was not able to or would not be able to fulfill representations made to Plaintiff Berry.

244.   Defendant Goett's false representations were made for the purpose of inducing Plaintiff Berry to rely upon them and for the purpose of obtaining rights to Plaintiff's Work, the Joy Berry Brand and the Joy Berry Character Trademarks.

245.   Plaintiff Berry justifiably relied on the false representations of Defendant Goett. Indeed, this is what she thought she was getting into when she entered into the first relationship with Defendant Goett, namely, the 2016 Agreement.

246.   Defendant Goett continued his pattern of misrepresentation and fraudulent inducement, including continued representations from the JBMC Business Proposal, in an effort to have Plaintiffs continue to do business with him and to enter into the 2017 Agreement.

247.   In reasonable and direct reliance upon the false representation of Defendant Goett, Plaintiffs passed up other opportunities to commercially exploit the Work, the Joy Berry Brand and the Joy Berry Character Trademarks and incurred at least $2,000,000 in costs and damages in the United States directly associated with the licensed products.

248.   On account of the foregoing, Defendant Goett is liable to Plaintiffs for the damages incurred as a result of Plaintiffs' detrimental reliance upon the misrepresentations of

Defendant Goett for an amount to be determined at trial, which upon information and belief exceeds the sum of Two Million Dollars ($2,000,000).

## THIRTEENTH CLAIM FOR RELIEF
### (Fraud)
### (Against Defendant Goett with Respect to the 2017 Agreement)

249.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 248 of their complaint as if fully set forth herein.

250.    As an inducement to enter into the 2017 Agreement, and in an effort to have Plaintiffs continue to do business with him, Defendant Goett continued his pattern of misrepresentation and fraudulent inducement, including continued representations from the JBMC Business Proposal.  Among other things, he continued to represent to Plaintiff Berry that (a) she would maintain control over the Work, (b) JBMC could and would market and distribute the licensed goods throughout the United States, and (c) Goett and JBMC would register and protect the copyrights and trademarks in the Work, when, in fact, they intended to and did misappropriate these intellectual property rights to themselves and intentionally infringed them. At the time of such representation, Defendant Goett knew or should have known that Plaintiffs would rely upon such representations.  Upon information and belief, at the time such representations were made, Defendant Goett knew or should have known that he was not able to or would not be able to fulfill representations made to Plaintiff Berry.

251.    Defendant Goett's false representations were made for the purpose of inducing Plaintiff Berry to rely upon them and for the purpose of obtaining rights to Plaintiff's Work, the Joy Berry Brand and the Joy Berry Character Trademarks.

252.    Plaintiff Berry justifiably relied on the false representations of Defendant Goett.

253.    In reasonable and direct reliance upon the false representation of Defendant Goett,

Plaintiffs passed up other opportunities to commercially exploit the Work, the Joy Berry Brand and the Joy Berry Character Trademarks and incurred at least $2,000,000 in costs and damages in the United States directly associated with the licensed products.

254.    On account of the foregoing, Defendant Goett is liable to Plaintiffs for the damages incurred as a result of Plaintiffs' detrimental reliance upon the misrepresentations of Defendant Goett for an amount to be determined at trial, which upon information and belief exceeds the sum of Two Million Dollars ($2,000,000).

**FOURTEENTH CLAIM FOR RELIEF**
**(Aiding and Abetting Defendant Goett**
**in his Fraudulent Inducement)**
**(Against Defendant Watkins with Respect to the 2016 Agreement)**

255.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 254 of their complaint as if fully set forth herein.

256. As an equal co-owner in JBM, LLC, and a partner with Plaintiff Berry in her efforts to develop and market new products in connection with the Work, the Joy Berry Brand and the Joy Berry Character Trademarks, and as a potential and soon to become shareholder and officer of JBMC, Defendant Watkins knew of Plaintiff Berry's plans and intentions, and the terms of the JBMC Business Proposal.

257. Upon information and belief, Defendant Watkins aided and abetted Defendant Goett in his intentional and willful fraudulent inducement of Plaintiff Berry to enter into a relationship with Defendant Goett, to enter into the 2016 Agreement and to generally continue to do business with Defendant Goett and Defendant Watkins by, among other things, failing to adequately represent and protect the interests of JBM, LLC and all its members by ensuring that Defendant Goett intended to and could fulfill his representations.  He engaged in a pattern of blatant disregard for both the law and Plaintiff Berry's rights as a member of JBM, LLC.

258.  As a direct and proximate result of Defendant Watkins' acts and omissions, as hereinabove set forth, Plaintiffs have been damaged in an amount which Plaintiffs cannot presently ascertain with certainty, but which Plaintiffs will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

259.  Upon information and belief, Defendant Watkins has been guilty of gross, wanton and willful conduct, and bad faith evincing a disingenuous and dishonest failure to carry out his contractual and fiduciary obligations, and by reason thereof, Plaintiffs, in addition to their actual damages, are entitled to recover from Defendant Watkins, on each such basis, damages for sake of example and by way of punishing Defendant Watkins in an amount as the Court may deem appropriate under the circumstances, but in no event less than Five Million Dollars ($5,000,000).

<strong>FIFTEENTH CLAIM FOR RELIEF</strong><br>
<strong>(Aiding and Abetting Defendant Goett</strong><br>
<strong>in his Fraudulent Inducement)</strong><br>
<strong><u>(Against Defendant Watkins with Respect to the 2017 Agreement)</u></strong>

260.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 259 of their complaint as if fully set forth herein.

261.  As an equal co-owner in JBM, LLC, and a partner with Plaintiff Berry in her efforts to develop and market new products in connection with the Work, the Joy Berry Brand and the Joy Berry Character Trademarks, and as a shareholder and officer of JBMC, Defendant Watkins knew of Plaintiff Berry's plans and intentions, and her dissatisfaction with the performance of Goett under the 2016 Agreement.

262.  Upon information and belief, Defendant Watkins aided and abetted Defendant Goett in his intentional and willful fraudulent inducement of Plaintiff Berry to enter into the 2017 Agreement and to generally continue to do business with Defendant Goett and Defendant Watkins by, among other things, failing to adequately represent and protect the interests of JBM,

LLC and all its members, including Berry, by ensuring that Defendant Goett intended to and could fulfill his representations.  He engaged in a pattern of blatant disregard for both the law and Plaintiff Berry's rights as a member of JBM, LLC.

263.   As a direct and proximate result of Defendant Watkins' acts and omissions, as hereinabove set forth, Plaintiffs have been damaged in an amount which Plaintiffs cannot presently ascertain with certainty, but which Plaintiffs will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

264.   Upon information and belief, Defendant Watkins has been guilty of gross, wanton and willful conduct, and bad faith evincing a disingenuous and dishonest failure to carry out his contractual and fiduciary obligations, and by reason thereof, Plaintiffs, in addition to their actual damages, are entitled to recover from Defendant Watkins, on each such basis, damages for sake of example and by way of punishing Defendant Watkins in an amount as the Court may deem appropriate under the circumstances, but in no event less than Five Million Dollars ($5,000,000).

**SIXTEENTH CLAIM FOR RELIEF**
**(Willful Misrepresentation)**
**(Against Defendants Goett and Watkins)**

265.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 264 of their complaint as if fully set forth herein.

266.   As an inducement to enter into the 2017 Agreement, Defendants Goett and Watkins represented to Plaintiffs that they could and would market and distribute the licensed goods throughout the United States.  At the time of such representation, Defendants Goett and Watkins knew or should have known that Plaintiffs would rely upon such representation.  Upon information and belief, at the time such representation was made, Defendants Goett and Watkins knew or should have known that they were not able to or would not be able to market and

distribute the licensed goods as represented to Plaintiffs.

267.    In reasonable and direct reliance upon the false representations of Defendants Goett and Watkins, Plaintiffs passed up other opportunities to commercially exploit the Work, the Joy Berry Brand and the Joy Berry Character Trademarks and incurred at least $2,000,000 in costs and damages in the United States directly associated with the licensed products.

268.    Upon information and belief, Defendants Goett and Watkins misrepresented to Plaintiffs their intention and ability to develop, manufacture and market the licensed goods.

269.    On account of the foregoing, Defendants Goett and Watkins are liable to Plaintiffs for the damages incurred as a result of Plaintiffs' detrimental reliance upon the misrepresentations of Defendants Goett and Watkins for an amount to be determined at trial, which upon information and belief exceeds the sum of Two Million Dollars ($2,000,000).

### SEVENTEENTH CLAIM FOR RELIEF
### (Tortious Breach of the Covenant
### of Good Faith and Fair Dealing)
### (Against Defendant Watkins)

270.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 269 of their complaint as if fully set forth herein.

271.    Plaintiffs are informed and believe, and on that basis allege, that in breach of the covenant of good faith and fair dealing implied in the Watkins/Berry Deal Point Memorandum and the Joy Berry Media, LLC Operating Agreement, Watkins embarked upon a course of conduct and plan designed to deprive Plaintiffs of their rights in the Work, the Joy Berry Brand and the Joy Berry Character Trademarks, and monies due Plaintiffs under same.

272.    Plaintiffs are informed and believe, and on that basis allege, that in furtherance of said plan, Watkins did all of the things hereinabove alleged, and further induced Plaintiff to enter into and proceed with the 2016 Agreement and the 2017 Agreement with no intention of ever

complying with his obligations under Watkins/Berry Deal Point Memorandum, the Joy Berry Media, LLC Operating Agreement, the 2016 Agreement or the 2017 Agreement, in connection with which Plaintiffs incurred costs.

273.    Moreover, Watkins, in unlawful collusion with Goett, entered into the January 12, 2017 Cancellation of Licensing Deal Point Memorandum between Joy Berry Media and Inspired (intended to cancel the Inspired Sublicense Agreement), and the January 12, 2017 Licensing Agreement between Joy Berry Media, Inc. and Inspired Studios, Inc., all in furtherance of his unlawful efforts to deprive Plaintiffs of their rights in the Work, the Joy Berry Brand and the Joy Berry Character Trademarks.

274.    Watkins' acts and conduct, as hereinabove alleged, constitute a tortious breach of the covenant of good faith and fair dealing implied in the Watkins/Berry Deal Point Memorandum and the Joy Berry Media, LLC Operating Agreement.

275.    As a direct and proximate result of Watkins' acts and omissions, as hereinabove set forth, Plaintiffs have been damaged in an amount which Plaintiffs cannot presently ascertain with certainty.  Plaintiffs will seek leave to amend this complaint to state the full amount of said damages when the same has been ascertained.

276.    Plaintiffs are informed and believe, and on that basis allege, that in breaching the covenant of good faith and fair dealing, as hereinabove set forth, Watkins has been guilty of fraud, oppression and malice and by reason thereof, Plaintiffs, in addition to their actual damages, are entitled to recover from Watkins damages for sake of example and by way of punishing Watkins in an amount as the Court may deem appropriate under the circumstances, but in no event less than One Million Dollars ($1,000,000).

### EIGHTEENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duties)
### <u>(Against Defendant Goett)</u>

277.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 276 of their complaint as if fully set forth herein.

278.    By reason of his position as a signatory of the 2017 Agreement, Defendant Goett owed other signatories, including Plaintiffs the fiduciary obligations of good faith, loyalty, honesty and due care.  Defendant Goett breached these fiduciary duties to Plaintiffs as fellow signatories to the 2017 Agreement.  As a signatory to the 2017 Agreement, Defendant Goett was in a joint venture with Plaintiffs to protect, develop and market the Work, the Joy Berry Brand and the Joy Berry Character Trademarks.  By virtue of his unlawful acts alleged elsewhere herein, Defendant Goett breached his fiduciary duties of care, loyalty and honesty.

279.    Defendant Goett, among other things, breached his duty of loyalty to Plaintiffs by, among other things, (a) attempting to usurp and control the Work, the Joy Berry Brand and the Joy Berry Trademarks, (b) usurping a corporate opportunity to acquire investment in JBMC from the Hattersleys and diverting such investment to Brite Star, (c) acting in a conflict of interest in attempting to obtain rights from Inspired in an effort to circumvent Plaintiffs' rights and claims relating to the 2017 Agreement, (d) unlawfully competing with Plaintiff, (e) tortiously interfering with Plaintiff Berry's business relationships and contractual relations with the Hattersleys and the Beringers, and (f) misappropriating an asset of the corporation, namely, the Inspired Sublicense, for the benefit of himself and Brite Star.

280.    As a co-owner of JBMC, Defendant Goett also owed Plaintiff Berry the fiduciary duties of good faith, trust, loyalty and due care, and was and is required to use his utmost ability to control and manage JBMC in a fair, just, honest and equitable manner.  Defendant Goett was

and is required to act in furtherance of the best interests of JBMC and its shareholders so as to benefit all shareholders equally and not in furtherance of his personal interest or benefit. Each shareholder of JBMC owes to JBMC and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of JBMC and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

281. Upon information and belief, Defendant Goett has breached his fiduciary duties to JBMC and his fellow shareholders thereof, including Plaintiffs, by, among other things, failing to properly pay or cause third parties to pay JBMC all monies lawfully due it, failing to properly account for all monies paid to JBMC, failing to disclose corporate opportunities to JBMC and/or Plaintiffs, failing to exercise voting rights in good faith, and diverting and converting JBMC funds for personal benefit.

282. As a direct and proximate result of Defendant Goett's acts and omissions, as hereinabove set forth, Plaintiffs have been damaged in an amount which Plaintiffs cannot presently ascertain with certainty, but which Plaintiffs will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

283. Upon information and belief, Defendant Goett has been guilty of gross, wanton and willful conduct, and by reason thereof, Plaintiffs, in addition to their actual damages, are entitled to recover from Defendant Goett damages for sake of example and by way of punishing Defendant Goett in an amount as the Court may deem appropriate under the circumstances, but in no event less than Five Million Dollars ($5,000,000).

### NINETEENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duties)
### (Against Defendant Watkins)

284.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 283 of their complaint as if fully set forth herein.

285.  By reason of his position as a signatory of the Watkins/Berry Deal Point Memorandum and a member of JBM, LLC, Defendant Watkins owed JBM, LLC and Plaintiff Berry the fiduciary obligations of good faith, trust, loyalty and due care, and was and is required to use his utmost ability to control and manage JBM, LLC in a fair, just, honest and equitable manner.  Defendant Watkins was and is required to act in furtherance of the best interests of JBM, LLC and its members so as to benefit all members equally and not in furtherance of his personal interest or benefit.  Each member of JBM, LLC owes to JBM, LLC and its members the fiduciary duty to exercise good faith and diligence in the administration of the affairs of JBM, LLC and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

286.  Defendant Watkins has breached his fiduciary duties to JBM, LLC and its sole fellow member thereof, Plaintiff Berry, by, among other things, failing to properly pay or cause third parties to pay JBM, LLC all monies lawfully due it, failing to properly account for all monies paid to JBM, LLC in conformance with the terms of the LLC Operating Agreement, failing to disclose corporate opportunities to JBM, LLC and/or Plaintiff Berry, failing to exercise voting rights in good faith, and diverting and converting JBM, LLC funds for personal benefit.

287.  Defendant Watkins further breached his fiduciary duties to Plaintiffs as fellow signatories to the 2017 Agreement.  As a signatory to the 2017 Agreement, Defendant Watkins was in a joint venture with Plaintiffs to protect, develop and market the Work, the Joy Berry

Brand and the Joy Berry Character Trademarks.  By virtue of his unlawful acts alleged elsewhere herein, including aiding and abetting Defendant Goett in his efforts to usurp and control the Work, the Joy Berry Brand and the Joy Berry Trademarks, Defendant Watkins breached his fiduciary duties of care, loyalty and honesty.

288.    Defendant Watkins, among other things, breached his duty of loyalty to Plaintiffs by, among other things, (a) usurping a corporate opportunity to acquire investment in JBMC from the Hattersleys and to attempt to divert such investment to Brite Star, (b) acting in a conflict of interest in attempting to obtain rights from Inspired in an effort to circumvent Plaintiffs' rights and claims relating to the 2017 Agreement, (c) competing with JBMC and Plaintiffs by aiding and abetting Defendant Goett's unlawful activities, and (d) misappropriating an asset of the corporation, namely, the Inspired Sublicense, for the benefit of Goett and Brite Star.

289.    As a direct and proximate result of Defendant Watkins' acts and omissions, as hereinabove set forth, Plaintiffs have been damaged in an amount which Plaintiffs cannot presently ascertain with certainty, but which Plaintiffs will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

290.    Upon information and belief, Defendant Watkins has been guilty of gross, wanton and willful conduct, and by reason thereof, Plaintiffs, in addition to their actual damages, is entitled to recover from Defendant Watkins damages for sake of example and by way of punishing Defendant Watkins in an amount as the Court may deem appropriate under the circumstances, but in no event less than Five Million Dollars ($5,000,000).

## TWENTIETH CLAIM FOR RELIEF
### (Wrongful Interference with Existing Contractual Relations)
### (Against the Goett Defendants)

291. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 290 of their complaint as if fully set forth herein.

292. Prior to beginning relationships with Defendant Watkins in 2012 and Defendant Goett in 2016, as set forth elsewhere herein, Plaintiff Berry enjoyed advantageous business relationships and contractual rights with the Beringers and the Hattersleys.

293. The Goett Defendants were aware of or should have known of those advantageous business relationships, contractual rights and opportunities.

294. Plaintiff is informed and believes that the Goett Defendants intentionally, maliciously and without justification interfered with those advantageous business relationships, contractual rights and opportunities by, among other things, (a) causing the Beringers to breach their fiduciary duties to Plaintiffs, (b) diverting investment from the Hattersleys intended for Plaintiffs to themselves and their own business interest, including Brite Star, (c) attempting to alienate Plaintiff Berry from the Beringers and the Hattersleys, (d) negotiating and attempting to enter into agreements with the Beringers and the Hattersleys, (e) attempting to indenture Plaintiff Berry to Brite Star, a company in which she holds no equity, by means of unlawfully obtaining the rights to loans allegedly paid to her, whereby she would never be paid any royalties related to use of the Work, the Joy Berry Brand or the Joy Berry Character Trademarks, and (f) attempting to obtain rights to the Work, the Joy Berry Brand and the Joy Berry Character Trademarks from Inspired in order to avoid their obligations under and liabilities for breach of the 2017 Agreement.

295.    As a direct and proximate result of the Goett Defendants' interference and disruption, Plaintiffs have been damaged in their business in an amount not yet ascertained, but which Plaintiffs will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

296.    Upon information and belief, the Goett Defendants have been guilty of gross, wanton and willful conduct, and by reason thereof, Plaintiffs, in addition to their actual damages, are entitled to recover from the Goett Defendants damages for sake of example and by way of punishing the Goett Defendants in an amount as the Court may deem appropriate under the circumstances, but in no event less than Five Million Dollars ($5,000,000).

### TWENTY-FIRST CLAIM FOR RELIEF
#### (Wrongful Interference with Prospective Contractual Relations)
#### (Against the Goett Defendants)

297.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 296 of their complaint as if fully set forth herein.

298.    Prior to beginning relationships with Defendant Watkins in 2012 and Defendant Goett in 2016, as set forth elsewhere herein, Plaintiff Berry enjoyed prospective advantageous business relationships and contractual rights with the Beringers and the Hattersleys.

299.    The Goett Defendants were aware of or should have known of those prospective advantageous business relationships, contractual rights and opportunities.

300.    Plaintiff is informed and believes that the Goett Defendants intentionally, maliciously and without justification interfered with those prospective advantageous business relationships, contractual rights and opportunities by, among other things, (a) causing the Beringers to breach their fiduciary duties to Plaintiffs, (b) diverting investment from the Hattersleys intended for Plaintiffs to themselves and their own business interest, including Brite

Star, (c) attempting to alienate Plaintiff Berry from the Beringers and the Hattersleys, (d) negotiating and attempting to enter into agreements with the Beringers and the Hattersleys, (e) attempting to indenture Plaintiff Berry to a company in which she holds no equity, Brite Star, by means of unlawfully obtaining the rights to loans allegedly paid to her, whereby she would never be paid any royalties related to use of the Work, the Joy Berry Brand or the Joy Berry Character Trademarks, and (f) attempting to obtain rights to the Work, the Joy Berry Brand and the Joy Berry Character Trademarks from Inspired in order to avoid their obligations under and liabilities for breach of the 2017 Agreement.

301.    As a direct and proximate result of the Goett Defendants' interference and disruption, Plaintiffs have been damaged in their business in an amount not yet ascertained, but which Plaintiffs will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

302.    Upon information and belief, the Goett Defendants have been guilty of gross, wanton and willful conduct, and by reason thereof, Plaintiffs, in addition to their actual damages, are entitled to recover from the Goett Defendants damages for sake of example and by way of punishing the Goett Defendants in an amount as the Court may deem appropriate under the circumstances, but in no event less than Five Million Dollars ($5,000,000).

### TWENTY-SECOND CLAIM FOR RELIEF
#### (Breach of Fiduciary Duties)
#### (Against Defendant Inspired)

303.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 302 of their complaint as if fully set forth herein.

304.    By reason of its position as a signatory to the Inspired Sublicense, Defendant Inspired owed JBM, LLC and Plaintiff Berry the fiduciary obligations of good faith, trust,

loyalty and due care. Defendant Inspired breached its fiduciary duties to Plaintiff as a fellow signatory to this agreement. As a signatory to the Inspired Sublicense, Defendant Inspired was obligated to protect, develop and market the Work, the Joy Berry Brand and the Joy Berry Character Trademarks. By virtue of its unlawful acts alleged herein, Defendant Inspired breached its fiduciary duties of care, loyalty and honesty.

305. Defendant Inspired, breached its duty of loyalty to Plaintiffs by, among other things, (a) acting in a conflict of interest in attempting to transfer rights to the Goett Defendants in their effort to circumvent Plaintiffs' rights and claims relating to the 2017 Agreement, (b) competing with Plaintiffs by aiding and abetting Defendant Goett's unlawful activities as alleged elsewhere herein, and (c) misappropriating Plaintiffs' assets for the benefit of itself and the Goett Defendants.

306. As a direct and proximate result of Defendant Inspired's acts and omissions, as hereinabove set forth, Plaintiffs have been damaged in an amount which Plaintiffs cannot presently ascertain with certainty, but which Plaintiffs will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

307. Upon information and belief, Defendant Inspired has been guilty of gross, wanton and willful conduct, and by reason thereof, Plaintiffs, in addition to their actual damages, are entitled to recover from Defendant Inspired damages for sake of example and by way of punishing Defendant Inspired in an amount as the Court may deem appropriate under the circumstances, but in no event less than Five Million Dollars ($5,000,000).

**TWENTY-THIRD CLAIM FOR RELIEF**
**(Wrongful Interference with Existing Contractual Relations)**
**(Against the Inspired Defendants)**

308.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 307 of their complaint as if fully set forth herein.

309.    On or about September 4, 2015, the date of the Inspired Sublicense, Plaintiff Berry enjoyed advantageous business relationships and contractual rights with one or more of the Goett Defendants.

310.    The Inspired Defendants were aware of or should have known of those advantageous business relationships, contractual rights and opportunities.

311.    Plaintiff is informed and believes that the Inspired Defendants intentionally, maliciously and without justification interfered with those advantageous business relationships, contractual rights and opportunities by, among other things, (a) attempting to alienate the Goett Defendants from Plaintiffs, (b) negotiating and attempting to enter into agreements with the Goett Defendants, (c) aiding and abetting the Goett Defendants' attempts to indenture Plaintiff Berry to Brite Star, a company in which she holds no equity, by means of unlawfully obtaining the rights to loans allegedly paid to her, whereby she would never be paid any royalties related to use of the Work, the Joy Berry Brand or the Joy Berry Character Trademarks, and (d) attempting to transfer rights to the Work, the Joy Berry Brand and the Joy Berry Character Trademarks to the Goett Defendants in order for them to attempt to continue to unlawfully use these works.

312.    As a direct and proximate result of the Inspired Defendants' interference and disruption, Plaintiffs have been damaged in their business in an amount not yet ascertained, but which Plaintiffs will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

313.    Upon information and belief, the Inspired Defendants have been guilty of gross, wanton and willful conduct, and by reason thereof, Plaintiffs, in addition to their actual damages, are entitled to recover from the Inspired Defendants damages for sake of example and by way of punishing the Inspired Defendants in an amount as the Court may deem appropriate under the circumstances, but in no event less than Five Million Dollars ($5,000,000).

**TWENTY-FOURTH CLAIM FOR RELIEF**
**(Wrongful Interference with Prospective Contractual Relations)**
**(Against the Inspired Defendants)**

314.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 313 of their complaint as if fully set forth herein.

315.    Prior to beginning relationships with the Inspired Defendants in 2015, as set forth elsewhere herein, Plaintiff Berry enjoyed prospective advantageous business relationships and contractual rights with the Beringers and the Hattersleys.

316.    The Inspired Defendants were aware of or should have known of those prospective advantageous business relationships, contractual rights and opportunities.

317.    Plaintiff is informed and believes that the Inspired Defendants intentionally, maliciously and without justification interfered with those prospective advantageous business relationships, contractual rights and opportunities by, among other things, (a) causing, or aiding and abetting others in causing, the Beringers to breach their fiduciary duties to Plaintiffs, (b) aiding and abetting others in their diversion of investment from the Hattersleys intended for Plaintiffs to themselves and their own business interests, including Brite Star, (c) attempting or aiding and abetting others in attempting to alienate Plaintiff Berry from the Beringers and the Hattersleys, (d) aiding and abetting others in their negotiations and attempts to enter into agreements with the Beringers and the Hattersleys, (e) aiding and abetting others in their

attempts to indenture Plaintiff Berry to Brite Star, a company in which she holds no equity, by means of unlawfully obtaining the rights to loans allegedly paid to her, whereby she would never be paid any royalties related to use of the Work, the Joy Berry Brand or the Joy Berry Character Trademarks, and (f) attempting to transfer rights to the Work, the Joy Berry Brand and the Joy Berry Character Trademarks to others in furtherance of their attempts to avoid their obligations under and liabilities for breach of the 2017 Agreement.

318. As a direct and proximate result of the Inspired Defendants' interference and disruption, Plaintiffs have been damaged in their business in an amount not yet ascertained, but which Plaintiffs will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

319. Upon information and belief, the Inspired Defendants have been guilty of gross, wanton and willful conduct, and by reason thereof, Plaintiffs, in addition to their actual damages, are entitled to recover from the Inspired Defendants damages for sake of example and by way of punishing the Inspired Defendants in an amount as the Court may deem appropriate under the circumstances, but in no event less than Five Million Dollars ($5,000,000).

### TWENTY-FIFTH CLAIM FOR RELIEF
#### (Unjust Enrichment)
#### (Against All Defendants)

320. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 319 of their complaint as if fully set forth herein.

321. All monies paid to the Defendants by third parties, including any payments between them, intended for the Plaintiffs, and all monies rightfully payable to the Plaintiffs and otherwise not paid or withheld by the Defendants, constitute a benefit to the Defendants and

unlawful use of Plaintiffs' monies.  Such benefits constitute unjust enrichment, for which the Defendants are obligated to Plaintiffs.

322.   As a direct and proximate result of the Defendants' acts and omissions, as hereinabove set forth, Plaintiffs have been damaged in an amount which Plaintiffs cannot presently ascertain with certainty, but which Plaintiff will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

**TWENTY-SIXTH CLAIM FOR RELIEF**
**(Implementation of a Constructive Trust)**
**(Against All Defendants)**

323.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 322 of their complaint as if fully set forth herein.

324.   The Defendants' willful acts of copyright infringement, unfair competition, conversion, breaches of fiduciary duties and wrongful interference with existing and prospective contractual relations complained of herein were engaged in without the knowledge or permission of Plaintiffs.  The Defendants have thus benefited from the use of Plaintiffs' monies and property to the exclusion and detriment of Plaintiffs.

325.   Upon information and belief, as alleged elsewhere herein, one or more of the Defendants have assisted in and contributed to the unlawful acts of one or more of the other Defendants and have benefited therefrom.

326.   Equity requires that the Court impress a constructive trust upon all Defendants as and to the benefit of Plaintiffs with regard to all monies received by them and with regard to the value of Plaintiffs' property, and with regard to all monies owed to them in the custody and control of third parties.

327.    Plaintiffs have been damaged by the actions of Defendants in an amount to be determined at trial, for the monies wrongfully received by Defendants, and for the value of Plaintiffs' infringed and converted property, and which are believed to be not less than One Million Dollars ($1,000,000).

### TWENTY-SEVENTH CLAIM FOR RELIEF
#### (Accounting)
#### (Against All Defendants)

328.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 326 of their complaint as if fully set forth herein.

329.    Pursuant to the 2016 Agreement, the 2017 Agreement and the Inspired Sublicense, the Defendants are obligated to keep and maintain true and accurate books and records reflecting the amounts owed Plaintiffs and to supply them with accounting statements reflecting said amounts.  At all relevant times mentioned herein, the Defendants have had, and now have, in their sole possession and custody, the books and records relating to any monies received by them and relating to the amounts of monies due to them from third parties.

330.    By reason of the acts and conduct of the Defendants, as hereinabove alleged, Plaintiffs are entitled to a complete accounting of all monies received by Defendants in connection with the 2016 Agreement, the 2017 Agreement, the Inspired Sublicense and any other sources of monies.  Plaintiffs request that the Court order the Defendants to render such accountings under the supervision of the Court.

### TWENTY-EIGHTH CLAIM FOR RELIEF
#### (Aiding and Abetting Copyright Infringement and Unfair Competition)
#### (Against Defendant SO HI)

331.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 330 of their complaint as if fully set forth herein.

332.    As more fully set forth herein, SO HI is linked to and benefits from the activities of the Goett Defendants' and the Insprired Defendants' wrongful copyright infringement and unfair competition alleged elsewhere herein.  Upon information and belief, SO HI has willfully aided and abetted the Goett Defendants and the Inspired Defendants by, among other things, assisting in the unlawful diversion of potential customers to the Brite Star Website and assisting in the wrongful connection between the Joy Berry Brand and other unauthorized and competing products and services.

333.    As a direct and proximate result of SO HI's acts and omissions, as hereinabove set forth, Plaintiffs have been damaged in an amount which Plaintiffs cannot presently ascertain with certainty, but which Plaintiffs will prove at trial, and which are believed to be not less than One Million Dollars ($1,000,000).

334.    Upon information and belief, in aiding and abetting the Goett Defendants and the Inspired Defendants in their wrongful acts, as hereinabove set forth, SO HI has been guilty of gross, wanton and willful conduct, and by reason thereof, Plaintiffs, in addition to their actual damages, are entitled to recover from SO HI damages for sake of example and by way of punishing SO HI in an amount as the Court may deem appropriate under the circumstances, but in no event less than Two Million Dollars ($2,000,000) each.

**TWENTY-NINTH CLAIM FOR RELIEF**
**(Piercing the Corporate Veil)**
**(Against Defendants Goett, JBMC,**
**V Media, the Goett Foundation,**
**the GDG Foundation, SO HI and Brite Star)**

335.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 334 of their complaint as if fully set forth herein.

336.   At all times relevant hereto, Defendant Goett exercised such control over JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star so as to cause JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star to be mere instrumentalities and alter egos of Defendant Goett and to, among other things, commit all wrongful acts complained of herein.

337.   Upon information and belief, the control of JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star by Defendant Goett, such that the corporate veils of JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star should be disregarded and Defendant Goett held responsible for the wrongful acts of JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star complained of herein, is demonstrated by at least the following:

  a.   Defendant Goett disregarded corporate formalities by, among other things, intermingling and sharing assets and personnel between himself and/or JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star, and moving funds between them as needed;

  b.   Inadequate capitalization of JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star, such that they required infusions of funds from Defendant Goett, and/or that they could not meet their financial or contractual obligations;

  c.   JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star intermingled funds and/or other corporate assets between them;

  d.   There was an overlap in ownership, officers, directors, and/or personnel between JBMC, V Media, the Goett Foundation, the GDG Foundation, SO

HI, Brite Star and/or other entities owned or controlled by Defendant Goett;

e.    JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI, Brite Star and/or other entities owned or controlled by Defendant Goett shared at least common office space, address, telephone numbers and email accounts;

f.    JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star showed minimal, if any, independent discretion in their business transactions giving rise to Plaintiffs' claims herein;

g.    Dealings between the corporate entities were not at arms' length;

h.    The corporations were not treated as independent profit centers;

i.    Defendant Geott paid for or guaranteed debts of JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and/or Brite Star; and

j.    JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI, Brite Star and/or Defendant Goett intermingled property between them.

338.    The control exercised over JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star by Defendant Goett was used to commit wrongs against Plaintiffs, through, among other things, the wrongful acts alleged elsewhere herein.

339.    The wrongs committed against Plaintiffs have resulted in an unjust loss or injury to Plaintiffs in that it has, among other things, deprived Plaintiffs of the full value of the Work, the Joy Berry Brand and the Joy Berry Character Trademarks, deprived Plaintiffs of the ability to engage in other commercial exploitation of same, and caused Plaintiffs' reputations and

standings in the children's education and publishing businesses and with the public at large to be jeopardized.

340.    Unless the corporate veil is pierced, Plaintiffs may be deprived of the full recovery to which they are entitled by virtue of all of their claims herein.

### THIRTIETH CLAIM FOR RELIEF
### (Piercing the Corporate Veil)
### (Against Defendants Watkins,
### Educational Publishing, JBM, LLC, and JBMC)

341.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 340 of their complaint as if fully set forth herein.

342.    At all times relevant hereto, Defendant Watkins exercised such control over Educational Publishing, JBM, LLC, and JBMC so as to cause Educational Publishing, JBM, LLC, and JBMC to be mere instrumentalities and alter egos of Defendant Watkins and to, among other things, commit all wrongful acts complained of herein.

343.    Upon information and belief, the control of Educational Publishing, JBM, LLC, and JBMC by Defendant Watkins, such that the corporate veils of Educational Publishing, JBM, LLC, and JBMC should be disregarded and Defendant Watkins held responsible for the wrongful acts of Educational Publishing, JBM, LLC, and JBMC complained of herein, is demonstrated by at least the following:

> a.    Defendant Watkins disregarded corporate formalities by, among other things, intermingling and sharing assets and personnel between himself and/or Educational Publishing, JBM, LLC, and JBMC, and moving funds between them as needed;

> b.    Inadequate capitalization of Educational Publishing, JBM, LLC, and JBMC, such that they required infusions of funds from Defendant

Watkins, and/or that they could not meet their financial or contractual obligations;

c.     Educational Publishing, JBM, LLC, and JBMC intermingled funds and/or other corporate assets between them;

d.     There was an overlap in ownership, officers, directors, and/or personnel between Educational Publishing, JBM, LLC, JBMC and/or other entities owned or controlled by Defendant Watkins;

e.     Educational Publishing, JBM, LLC, JBMC and/or other entities owned or controlled by Defendant Watkins shared at least common office space, address, telephone numbers and email accounts;

f.     Educational Publishing, JBM, LLC, and JBMC showed minimal, if any, independent discretion in their business transactions giving rise to Plaintiffs' claims herein;

g.     Dealings between the corporate entities were not at arms' length;

h.     The corporations were not treated as independent profit centers;

i.     Defendant Watkins paid for or guaranteed debts of Educational Publishing, JBM, LLC, and/or JBMC;

j.     Educational Publishing, JBM, LLC, JBMC and/or Defendant Watkins intermingled property between them; and

k.     Defendant Watkins repeatedly signed contracts in the name of one Joy Berry Media, Inc. when it appears that the contract should have been signed in the name of JBM, LLC.

344.    The control exercised over Educational Publishing, JBM, LLC, and JBMC by Defendant Watkins was used to commit wrongs against Plaintiffs, through, among other things, the wrongful acts alleged elsewhere herein.

345.    The wrongs committed against Plaintiffs have resulted in an unjust loss or injury to Plaintiffs in that it has, among other things, deprived Plaintiffs of the full value of the Work, the Joy Berry Brand and the Joy Berry Character Trademarks, deprived Plaintiffs of the ability to engage in other commercial exploitation of same, and caused Plaintiffs' reputations and standings in the children's education and publishing businesses and with the public at large to be jeopardized.

346.    Unless the corporate veil is pierced, Plaintiffs may be deprived of the full recovery to which they are entitled by virtue of all of their claims herein.

**THIRTY-FIRST CLAIM FOR RELIEF**
**(Piercing the Corporate Veil)**
**(Against Defendants Kasen and Inspired)**

347.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 346 of their complaint as if fully set forth herein.

348.    At all times relevant hereto, Defendant Kasen exercised such control over Inspired so as to cause Inspired to be a mere instrumentality and alter ego of Defendant Kasen and to, among other things, commit all wrongful acts complained of herein.

349.    Upon information and belief, the control of Inspired by Defendant Kasen, such that the corporate veils of Inspired should be disregarded and Defendant Kasen held responsible for the wrongful acts of Inspired complained of herein, is demonstrated by at least the following:

a.   Defendant Kasen disregarded corporate formalities by, among other things, intermingling and sharing assets and personnel between himself and Inspired, and moving funds between them as needed;

a.   Inadequate capitalization of Inspired, such that it required infusions of funds from Defendant Kasen, and/or that it could not meet its financial or contractual obligations;

b.   Defendant Kasen and Inspired intermingled funds and/or other corporate assets between them;

c.   There was an overlap in ownership, officers, directors, and/or personnel between Inspired and other entities owned or controlled by Defendant Kasen;

d.   Inspired and/or Kasen and other entities owned or controlled by Defendant Kasen shared at least common office space, address, telephone numbers and email accounts;

e.   Inspired showed minimal, if any, independent discretion in its business transactions giving rise to Plaintiffs' claims herein;

f.   Dealings between Kasen and Inspired was not at arms' length;

g.   Inspired was not treated as an independent profit center;

h.   Defendant Watkins paid for or guaranteed debts of Inspired;

i.   Inspired and Defendant Kasen and/or other entities owned or controlled by Defendant Kasen intermingled property between them.

350.   The control exercised over Inspired by Defendant Kasen was used to commit wrongs against Plaintiffs, through, among other things, the wrongful acts alleged elsewhere herein.

351.   The wrongs committed against Plaintiffs have resulted in an unjust loss or injury to Plaintiffs in that it has, among other things, deprived Plaintiffs of the full value of the Work, the Joy Berry Brand and the Joy Berry Character Trademarks, deprived Plaintiffs of the ability to engage in other commercial exploitation of same, and caused Plaintiffs' reputations and standings in the children's education and publishing businesses and with the public at large to be jeopardized.

352.   Unless the corporate veil is pierced, Plaintiffs may be deprived of the full recovery to which they are entitled by virtue of all of their claims herein.

**THIRTY-SECOND CLAIM FOR RELIEF**
**(Equitable Estoppel)**
**(Against All Defendants)**

353.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 352 of their complaint as if fully set forth herein.

354.   Upon information and belief, Defendants have asserted and may assert defenses to Plaintiffs' claims based on, among other things, accrual of rights in the Inspired Sublicense or Plaintiff Berry's waiver or acquiescence, all of which Plaintiffs dispute.

355.   To the extent that the Court may be persuaded by any such defenses in the first instance, any such defenses are barred by the doctrine of equitable estoppel as evidenced by the extensive unclean hands of the Defendants set forth throughout this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, jointly and severally, as follows:

1.      Permanently enjoining and restraining Defendants, their respective officers, agents, servants, employees and attorneys, and predecessors and successors, by whatever name, and all those in active concert or participation with them from:

(a)      Further violating any of the exclusive rights of Plaintiffs in the copyrighted "The Joy Berry Classics," including the display, importation, reproduction, preparation, sale or distribution of any and all copies thereof;

(b)      Further infringing upon Plaintiffs' rights under the Copyright Act by importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products not authorized by Plaintiffs, incorporating any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' copyrighted works or any of their creative elements;

(c)      Using any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' copyrighted works in such fashion as to relate or connect, or tend to relate or connect such copies in any way to Plaintiffs;

(d)      From using the Joy Berry Brand or the Joy Berry Character Trademarks or any marks similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of any books, educational materials, videos, audio recordings or other products or services bearing or in connection with any products or services offered by Defendants;

(e)     From using the Joy Berry Brand or the Joy Berry Character Trademarks in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of any books, educational materials, videos, audio recordings or other products or services bearing or in connection with any products or services offered by Defendants or any products or services that are the same or similar to those manufactured, distributed, offered for sale and/or sold by Plaintiffs;

(f)     From using or maintaining registered rights in the domain name <joyberrybooks.com> and any other domain names that are the same or similar to the Joy Berry Brand or the Joy Berry Character Trademarks;

(g)     From using any logo, trade name or trademark that may be calculated to falsely represent or that has the effect of falsely representing that the services or products of Defendants are sponsored by, authorized by or in any way associated with the Plaintiffs or the Joy Berry Brand;

(h)     Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products or services manufactured, distributed or sold by Defendants are in any manner associated or connected with Plaintiffs or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

(i)     Engaging in any other activity constituting unfair competition with Plaintiffs or their licensees, or constituting an infringement of any of Plaintiffs' copyrights or of Plaintiffs' rights in, or rights to use or to exploit, said copyrights, including aiding and abetting third parties engaging in such activities;

77

(j)      Engaging in any acts or activities directly or indirectly calculated to trade upon or injure the reputation or the goodwill of Plaintiffs or in any manner to compete unfairly with Plaintiff by appropriating the distinctive creative elements of Plaintiffs' copyrighted works;

(k)      Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs 1(a) through (j) hereinabove; and

(l)      Secreting, destroying, altering, removing or otherwise dealing with copies of any products bearing the Joy Berry Brand or any of the Joy Berry Character Trademarks, or any books or records which contain any information relating to the importation, manufacture, production, distribution, circulation, sale, marketing, offering for sale, advertising, promoting or displaying of any products bearing the Joy Berry Brand or any of the Joy Berry Character Trademarks by Defendants.

2.      Directing that Defendants deliver for impoundment:

(a)      All copies of any and all products or things bearing or connected with the Copyrights, the Joy Berry Brand and the Joy Berry Character Trademarks, including books, educational materials, sound recordings in any format, CDs, cassettes, DVDs, videocassettes, digital audio and/or video files, labels, boxes, signs, packages, advertisements, novelty items, prints, dyes, wrappers, receptacles and any other such goods or merchandise in Defendants' possession, custody or control incorporating or associated with the Copyrights, the Joy Berry Brand and the Joy Berry Character Trademarks; and

(b)      All masters, plates, molds, mechanicals, digital or analog files or tapes, or apparatus utilized in making copies of any products incorporating or associated with the

Copyrights, the Joy Berry Brand and the Joy Berry Character Trademarks and packaging therefor, and all digital files of same in whatever media they are maintained.

3. Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products or services manufactured, sold or otherwise circulated or promoted by Defendants are authorized by Plaintiffs or related in any way to Plaintiffs or their products or services.

4. Directing that an accounting of and judgment be rendered against each Defendant, jointly and severally, for:

(a) Statutory damages as provided by 17 U.S.C. Sec. 504(a);

(b) All profits received by any of the Defendants from the sale or other commercial exploitation of the Copyrights, as provided by 17 U.S.C. Sec. 504(b), including all revenues received relating to or deriving from, in any manner whatsoever, books, learning materials, videos, audio recordings or other products or services incorporating the Copyrights in whole or in part, and any profits received by third parties as a result of activities for which Defendants may be found contributorily or vicariously liable;

(c) All damages suffered by Plaintiffs as a result of any of Defendants' copyright infringements, as provided by 17 U.S.C. Sec. 504(a), whether as a result of their direct, contributory or vicarious actions;

(d) All monies received from whatever source, directly or indirectly, by any of the Defendants as unjust enrichment from the exploitation of the Copyrights, the Joy Berry Brand or the Joy Berry Character Trademarks.

5. Awarding Plaintiffs punitive damages of not less than $20,000,000.

6.      Awarding Plaintiffs their costs in this action, including reasonable attorneys' and investigative fees, as provided by 17 U.S.C. Sec. 505.

7.      Pursuant to 15 U.S.C. § 1116(a), ordering Defendants to file with the Court and serve upon Plaintiffs' counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

8.      Finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association and have infringed the Joy Berry Brand and the Joy Berry Character Trademarks in violation of 15 U.S.C. § 1125(a).

9.      Finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association and have infringed the Joy Berry Brand in violation of 15 U.S.C. § 1125(d).

10.     Finding that the acts complained of above constitute willful infringement of the Joy Berry Brand and the Joy Berry Character Trademarks.

11.     Ordering Defendants to transfer the registration of the <joyberrybooks.com> domain name and the registrations of any other domain names that are the same or similar to the Joy Berry Brand or the Joy Berry Character Trademarks to Plaintiff Joy Berry.

12.     Ordering Defendants to pay Plaintiffs:

(a)     Defendants' profits from the sale of all infringing goods and services bearing or in connection with the Joy Berry Brand and the Joy Berry Character Trademarks;

(b)     Treble actual damages in connection with Defendants' infringement of the Joy Berry Brand and the Joy Berry Character Trademarks; and

(c)      Plaintiffs' costs and reasonable attorneys' fees incurred in this matter.

13.      Awarding Plaintiffs pre-judgment and post-judgment interest against Defendants.

14.      Requiring Defendants to account and pay over to the Plaintiffs an amount equal to Defendants' unjust enrichment and conversion of Plaintiffs' monies.

15.      Awarding Plaintiffs an amount equal to their damages incurred on account of fraud of the Goett Defendants in an amount of not less than $5,000,000.

16.      Awarding Plaintiffs an amount equal to their damages incurred on account of their detrimental reliance upon the misrepresentations of the Goett Defendants in an amount of not less than $5,000,000.

17.      Awarding Plaintiffs an amount equal to their damages incurred on account of the breach of fiduciary duties by Defendant Watkins in an amount of not less than $5,000,000.

18.      Awarding Plaintiffs an amount equal to their damages incurred on account of the breach of fiduciary duties by Defendant Goett in an amount of not less than $5,000,000.

19.      Awarding Plaintiffs an amount equal to their damages incurred on account of the wrongful interference with existing contractual relations by the Goett Defendants in an amount of not less than $5,000,000.

20.      Awarding Plaintiffs an amount equal to their damages incurred on account of the wrongful interference with prospective contractual relations by the Goett Defendants in an amount of not less than $5,000,000.

21.      Awarding Plaintiffs an amount equal to their damages incurred on account of the breach of fiduciary duties by Defendant Inspired in an amount of not less than $5,000,000.

22.     Awarding Plaintiffs an amount equal to their damages incurred on account of the wrongful interference with prospective contractual relations by the Inspired Defendants in an amount of not less than $5,000,000.

23.     Awarding Plaintiffs an amount equal to their damages incurred on account of the wrongful interference with existing contractual relations by the Inspired Defendants in an amount of not less than $5,000,000.

24.     Impressing a constructive trust upon all Defendants as and to the benefit of Plaintiffs with regard to all monies received by them and with regard to the value of Plaintiffs' property, and with regard to all monies owed to Defendants in the custody and control of third parties.

25.     Finding that at all times relevant hereto, Defendant Goett exercised such control over JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star so as to cause JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and Brite Star to be mere instrumentalities and alter egos of Defendant Goett and to, among other things, commit all wrongful acts complained of herein, and that as a result thereof Defendant Goett is personally liable for all damages that may be assessed in this action against JBMC, V Media, the Goett Foundation, the GDG Foundation, SO HI and/or Brite Star.

26.     Finding that at all times relevant hereto, Defendant Watkins exercised such control over Educational Publishing, JBM, LLC, and JBMC so as to cause Educational Publishing, JBM, LLC, and JBMC to be mere instrumentalities and alter egos of Defendant Watkins and to, among other things, commit all wrongful acts complained of herein, and that as

a result thereof Defendant Watkins is personally liable for all damages that may be assessed in this action against Educational Publishing, JBM, LLC, and/or JBMC.

27.     Finding that at all times relevant hereto, Defendant Kasen exercised such control over Inspired so as to cause Inspired to be a mere instrumentality and alter ego of Defendant Kasen and to, among other things, commit all wrongful acts complained of herein, and that as a result thereof Defendant Kasen is personally liable for all damages that may be assessed in this action against Inspired.

28.     Estopping Defendants from asserting any claims or defenses against Plaintiffs by virtue of Defendants' unclean hands.

29.     Directing that the Court retains jurisdiction of this action for the purpose of enabling Plaintiffs to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

29.     Awarding to Plaintiffs such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
           January 4, 2019                                    Respectfully submitted,

                                                              FROM LAW, PLLC

                                                                   /Nadine Y. From/
                                                              By_____
                                                                   Nadine Y. From (NF 5016)
                                                                   6 St. Johns Lane
                                                                   New York, New York 10013
                                                                   Tel:    (212) 655-5492
                                                                   Email:  nadine@nyfrom.com

83

D H CAVANAUGH ASSOCIATES

/Dennis H. Cavanaugh/

By_____

Dennis H. Cavanaugh (DC 3146)
555 Fifth Avenue, 17th Floor
New York, New York 10019
Tel:    (212) 856-7210
Fax:    (212) 856-7211
Email:  dhc@dhcavanaugh.net

*Attorneys for Plaintiffs*